JOLLEY URGA WOODBURY HOLTHUS & ROSE
WILLIAM R. URGA (Nev. Bar No. 1195)
wru@juww.com
330 S. Rampart Blvd., Suite 380
Las Vegas, NV 89145
Telephone:     702.699.7500
Facsimile:     702.699.7555

ARNOLD & PORTER KAYE SCHOLER LLP
MICHAEL A. BERTA (admitted *pro hac vice*)
michael.berta@apks.com
SEAN M. CALLAGY (admitted *pro hac vice*)
sean.callagy@apks.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:     415.471.3100
Facsimile:     415.471.3400

Attorneys for Defendants
CROCS, INC. a Delaware corporation;
KIM LAWRIE; ERIK RUFER;
and KELLY GRAY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation, | Case No.: 2:17-cv-02054 |
| Plaintiff, | **DEFENDANTS' MOTION FOR SANCTIONS** |
| v. | |
| CROCS, INC., a Delaware corporation, KIM LAWRIE, a Washington resident, ERIK RUFER, a Washington resident, and KELLY GRAY, a Colorado resident, | Date: <br> Time: <br> Judge:            Hon. James C. Mahan <br> Magistrate Judge:  Hon. Nancy J. Koppe |
| Defendants. | Trial Date:      None |

1    Defendants Crocs, Inc. ("Crocs"), and Kim Lawrie, Erik Rufer, and Kelly Gray (together,

2    "Defendants"), hereby move for sanctions against Plaintiff U.S.A. Dawgs, Inc. ("Dawgs") pursuant

3    to Rule 11, 28 U.S.C. § 1927, and the Court's inherent power.

4    Defendants served their opening Rule 11 Motion on Dawgs within two weeks of this lawsuit

5    being filed.  In that Motion, Defendants layed out why fundamental allegations in the Complaint

6    accusing Crocs and its employees of corporate hacking and espionage and trade dress infringement

7    were objectively baseless.  Dawgs did not amend or withdraw anything during the safe harbor

8    period.  Instead, Dawgs compelled Defendants to fully litigate this case for several months.  Dawgs

9    then sent a letter to Crocs, relying in part on this litigation and the threat of increased litigation costs

10   to Crocs to defend its employees, and further threatened a "media campaign," unless Crocs agreed

11   to pay off Dawgs.

12   In the meantime, Defendants have incurred substantial expenses litigating this matter.

13   Defendants fully briefed their Motions to Dismiss and for Rule 11 sanctions.  Defendants also

14   participated in a Rule 26(f) conference, submitted a joint discovery plan, and engaged in substantial

15   efforts to both respond to Dawgs's discovery requests while taking discovery of their own within

16   the Court's short discovery window.

17   For its part, Dawgs has not produced a scrap of evidence substantiating its salacious hacking

18   and corporate espionage claims.  Nor has Dawgs done anything to correct the public record and

19   media coverage regarding its false claims about Crocs and Crocs's employees.  Instead, when Crocs

20   refused to pay Dawgs off for its false claims, Dawgs dismissed this case, purportedly "without

21   prejudice," before the Court could rule on the Motion to Dismiss or the Rule 11 Motion.

22   Dawgs's failure to provide any evidentiary support for its claims, coupled with its extortion

23   demand and its dismissal of this action without prejudice when that demand did not work, are

24   objective evidence that this action was filed and pursued in bad faith.  Dawgs filed the lawsuit to

25   obtain litigation leverage over Crocs in separate proceedings, to give itself a free pass for

26   disparaging media coverage, and to cause Crocs to incur substantial fees in defending itself and its

27   employees.  Defendants respectfully request that the Court sanction Dawgs and order it to pay the

28   costs and fees Crocs incurred in defending this lawsuit, issue a public retraction and apology to the

individuals Dawgs has wrongly maligned, and be prohibited from filing suit against Crocs and its employees in this jurisdiction without advance permission from the Court.

## I.   DAWGS HAS IMPROPERLY SUED CROCS <u>THREE TIMES</u> IN THIS COURT.

### A.   Dawgs Filed—And Abandoned—Two Other Lawsuits Against Crocs, And Was Found To Have Acted In Bad Faith.

In 2014, Dawgs filed an antitrust lawsuit against Crocs in this District.  *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:14-cv-1461 (D. Nev.).  Judge Boulware found the case to be duplicative of claims Dawgs had filed against Crocs in the parties' preexisting lawsuit in Colorado ("the Colorado action").  *Id.* ECF No. 51.[1]  Judge Boulware ordered the case transferred to Colorado, and Dawgs thereafter abandoned it.  *Id.*; *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 1:15-cv-02185 (D. Colo.), ECF No. 36 (Dawgs dismissing the lawsuit without prejudice following transfer).

In 2016, Dawgs filed an anticipatory declaratory judgment lawsuit against Crocs, mere weeks after Crocs sought to add identical claims to the Colorado action.  *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:16-cv-1694 (D. Nev.).  Dawgs maintained the suit for several months—necessitating a motion to dismiss and request for a stay of discovery—but then dismissed the lawsuit without prejudice, before the Court could rule on the motion to dismiss.  *Id.* ECF Nos. 22, 26, 27.  This Court found that Dawgs acted in bad faith because it brought and maintained the lawsuit as a "bargaining chip" to obtain leverage over Crocs in the Colorado action.  *Id.* ECF No. 41, at 5–6.

### B.   Dawgs Refused To Withdraw Its Baseless Allegations Against Crocs And Three Individual Defendants.

On July 27, 2017, Dawgs filed this case against Crocs and three of its current and former employees.  The gravamen of the Complaint was that several of Crocs's employees had engaged in hacking and corporate espionage of Dawgs's confidential information in November 2016, and thereafter caused flash retailer Zulily to pull certain of Dawgs's products from forthcoming sales

---

[1] Defendants briefly laid out the eleven-year litigation history between Crocs and Dawgs in their Rule 11 Motion, including the fact that the ITC found that Dawgs infringed two of Crocs's patents. ECF No. 15, at 3-5.

events.  Dawgs made these allegations based on one email produced by Zulily in the Colorado action, in which Crocs employee (and Defendant) Kim Lawrie states that she was on Zulily's "New Tomorrow" site and saw that Dawgs had knock-off footwear loaded into a next-day sales event. ECF No. 1-1.  In addition to its hacking claims, Dawgs alleged that Crocs engaged in further corporate espionage by purportedly "stealing" Dawgs's trade dress for a "Z-shaped upper" design on a sandal during a 2013 meeting, and released an infringing product several years later, in 2017.

On August 14, 2017, Defendants served a Rule 11 Motion upon Dawgs.  ECF No. 15-1 ¶ 18. The Motion showed that Dawgs had made several objectively baseless allegations, chief among them (1) that "[t]he only way that Lawrie could 'get into Dawgs' event' would have been by unlawfully obtaining or accessing without authorization Zulily's computer system and/or Dawgs' vendor portal" (Compl. ¶ 47); and (2) that "Crocs first offered for sale a comparable sandal with a Z-shaped upper in 2017" (*id.* ¶ 32).  As Crocs explained, information from the email on which Dawgs relied, as expressly confirmed by Zulily, showed that Ms. Lawrie had *lawfully accessed* next-day sales information, proving that Dawgs had no objective basis to assert that "hacking" had occurred, and certainly that hacking was not the "only way" Ms. Lawrie could have learned of Dawgs's plan to sell knock-off Crocs.  ECF No. 15, at 7-9.  And, Crocs established that documents within Dawgs's own possession prior to filing suit showed that Crocs has offered a Z-strapped sandal since 2009, confirming that it did not steal any such Z-strap design from Dawgs.  *Id.* at 5-7. Both of Dawgs's statements, which formed the basis of its lawsuit against the Defendants, were and are false.

The Rule 11 Motion further identified the many legal deficiencies in Dawgs's Complaint. For instance, Dawgs sued Crocs employees Erik Rufer and Kelly Gray with no basis to claim personal jurisdiction, and no basis to make any claim at all, solely because they were copied on an email correspondence between Ms. Lawrie and Zulily.  *Id.* at 12.  And, Dawgs's trade dress claims failed because they were time-barred, and Dawgs could not plausibly assert a protectable interest in a generic "Z-shaped upper" on a sandal.  *Id.* at 12.

During the 21-day safe harbor period, Dawgs did not withdraw or amend any portion of its Complaint.  Rather, Dawgs insisted in a letter that it was Defendants' obligation to provide

"exculpatory" evidence to *disprove* Dawgs's speculative assertions of hacking.  ECF No. 19-1, at 2-4.  On the trade dress claim, Dawgs defended its claim by expressly walking away from the trade dress it asserted in the Complaint, and claiming a new trade dress that excluded "wedge" sandals, but this was expressly contradicted by evidence on Dawgs's own website.  *See* ECF No. 21, at 5-6 (showing that Dawgs's own Loudmouth Z Sandal has a 2" heel, making it a wedge).  Defendants first filed a Motion to Dismiss on August 21 (ECF No. 10), followed by their Rule 11 Motion on September 6 (ECF No. 15).  Dawgs opposed both motions, and Defendants replied.  ECF Nos. 13, 17, 19, 21.

C.   **Defendants Provided Substantial Discovery, While Dawgs Produced No Evidence Substantiating Any Of Its Claims.**

Pursuant to the Local Rules, the parties held a Rule 26(f) conference on September 20, 2017, and submitted a proposed discovery plan and scheduling order, which the Court approved.  ECF No. 27, 28, 30.  The discovery plan provided that all discovery was to be completed by February 16, 2018, consistent with this District's presumptive 180-day window from the time of Defendants' appearance.

Given the relatively short discovery window in this District, Defendants moved quickly to gather substantial materials related to Dawgs's claims.  Declaration of Sean Callagy ("Callagy Decl.") ¶2.  This encompassed processing over 500 gigabytes of ESI and emails spanning several years, including records and emails from each of the individual Defendants' employment with Crocs, records of Crocs's sales to and communications with Zulily, and records dating back to approximately 2008 concerning the design, sales, and marketing of the footwear showing that Dawgs's trade dress claims had no merit.  *Id.*  ¶4; Declaration of Michael Berta ("Berta Decl.") Ex. 2.  Gathering these materials entailed numerous discussions between Defendants and counsel, and demanded laborious efforts from many individuals within Crocs.  Callagy Decl. ¶2; Berta Decl. ¶19.  After collections were complete, counsel for Defendants reviewed thousands of documents and made an initial production of 3,651 pages pursuant to Requests For Production propounded by Dawgs.  Callagy Decl. ¶¶3-4.  By mid-November, counsel was preparing to make another production of several thousand more pages.  *Id.* ¶4.

Defendants also served discovery immediately after the Rule 26(f) conference, seeking documents proving up the objective bases, if any, of Dawgs's contentions.  In the following two months, Dawgs produced a grand total of *64 pages* of documents.  *Id.* ¶¶5-6.  These included emails between Dawgs and Zulily about Dawgs's planned sales event in early November of 2016, but not one document actually showed that someone at Crocs hacked Dawgs sales data, either then, or a *second* alleged time in late November of 2016.  *Id.* ¶6; *cf.* Compl. ¶50 (asserting that Zulily dissolved Dawgs's "Black Friday" sales event in late November, because "[u]pon information and belief, Defendants again secured access to, or obtained information from, Dawgs' vendor portal and used that information to deny Dawgs access to Zulily's website and to cancel Dawgs impending sales event").

Defendants also propounded interrogatories seeking the factual bases of Dawgs's contentions.  Dawgs's responses—for which it never provided a verification—mainly referred in circular fashion to the conclusory allegations in its Complaint, yet did not set forth any <u>facts</u> supporting its allegations.  Callagy Decl. ¶5 & Ex. A.  As "evidence" of hacking, Dawgs merely stated that it had not given the *final* sign-off for its planned sales event at the time Ms. Lawrie saw Dawgs on the New Tomorrow site, as if this were proof of anything.  *Id.* Ex. A, at 8-9.  As "evidence" that Dawgs was hacked a *second* time in late November of 2016, Dawgs merely said it "believes that a similar series of events [to the alleged November 8 hacking] occurred later that same month when another Dawgs' sales event was dissolved by Zulily."  *Id.* Ex. A, at 11 (response to Interrogatory No. 10).  In other words, this allegation was pure speculation.

As for the trade dress claim, none of the documents produced by Dawgs bore on the purported design, manufacture, or marketing of the "Z-shaped upper" on a sandal.  *Id.* ¶6.  Dawgs also produced no evidence of non-functionality or secondary meaning for its claimed "Z-shaped upper"—both required to establish trade dress rights—nor a single instance of confusion between Dawgs sandals with a Z-shaped upper and any Crocs footwear.  *Id.*  In its responses to Interrogatories directed at this issue, Dawgs said it would produce documents pursuant to Rule 33(d) reflecting these matters—yet Dawgs never produced anything in this regard.  *Id.* Ex. A, at 5. Nor did Dawgs provide *any* evidence whatsoever remotely suggesting that Crocs had copied

Dawgs's claimed "trade dress."  Although Defendants met-and-conferred and asked Dawgs to supplement its responses, Dawgs never did so.  *Id.* ¶5.

In sum, none of the documents or interrogatory responses provided by Dawgs during the litigation remotely substantiated Dawgs's assertions of hacking, espionage, or trade dress theft.

Defendants also noticed depositions of certain Dawgs officer and employees, and issued third-party subpoenas to former Dawgs employees who had interacted with Zulily or attended the 2013 meeting at which Dawgs claimed Crocs stole the alleged "Z-shaped upper" trade dress.  *Id.* ¶7. Dawgs demanded that several of these dates be pushed back, to which Defendants acceded.  Dawgs then dismissed the lawsuit "without prejudice" with less than two weeks to go before most of the depositions were to take place.  *Id.*

### D.  Dawgs Reveals Its Plan To Use Serial Litigation And Press Coverage To Drive Up Crocs's Costs.

On October 27, 2017, Dawgs CEO Steven Mann sent a letter to Crocs's CEO.  Callagy Decl. Ex. B.  In the letter, Mr. Mann notes that Dawgs had filed lawsuits against over twenty current and former Crocs employees, officers and directors in various fora, specifically in Colorado, Nevada, and Saskatchewan (where Dawgs's Canadian affiliate is based).  Mr. Mann stated "you will soon see a dramatic increase in litigation costs now that Crocs is paying legal fees for at least 17 of the defendants in the Colorado case—whose motion to dismiss was recently denied—and will also have to defend litigation in Canada and elsewhere (as discussed below)."  *Id.* Ex. B, at 1. Along with baseless diatribes about other meritless claims Dawgs has filed against Crocs and its employees in Colorado and Canada, Dawgs also expressly referenced this lawsuit:

> Dawgs has raised claims against Crocs and three of its current and former employees for illegally accessing Dawgs' portal on Zulily (which Crocs then used to cause Zulily to cancel one or more Dawgs sales events on Zulily).  The Crocs employees who accessed Dawgs data, and admitted doing so in an email produced by Zulily, is believed to have had the ability to do so because of access she improperly retained from her prior employment at Zulily.[2]  Dawgs has already served detailed discovery

---

[2] Dawgs never provided a scrap of evidence that Ms. Lawrie "improperly retained" back-door access into Zulily's systems from her time, years earlier, as a Zulily employee. *Cf.* Compl. ¶ 42 ("Upon information and belief, Lawrie's experience working for Zulily provided her with unique insight into how the Zulily vendor portals operated and/or how information may be obtained from

Footnote continued on next page

in this matter on Crocs, will also be taking discovery of Zulily about its relationship with Crocs.

Dawgs has also asserted that Crocs' Women's Swiftwater Sandal, which Crocs began selling earlier this year, violates Dawgs' trade dress rights for its own Z Sandal, which it has been selling for a decade.

*Id.* Ex. B, at 5.  Mr. Mann subsequently stated that "Dawgs will also be doing everything necessary in the public domain, including launching a media campaign, to make people aware of what has been happening for the past 14 years at the expense of our company, Crocs' other competitors and the consumers who were duped."  *Id.* Ex. B, at 6.  Mr. Mann said Dawgs would do so unless Crocs made a proposal for "an equitable business solution."

In the weeks following Mr. Mann's letter, numerous reporting agencies reported on Dawgs's various claims against Crocs and the individuals Dawgs sued in various jurisdictions.  *Id.* Exs. C, D & E.

On November 17, 2017, Dawgs filed a notice dismissing this entire action without prejudice. ECF No. 42.

## II.  DEFENDANTS REQUEST THAT DAWGS BE REQUIRED TO PAY DEFENDANTS' FEES AND COSTS PURSUANT TO RULE 11.

Defendants' Rule 11 Motion was filed because the Complaint in this matter was filed without any legal basis and in disregard of the truth.  Rather than withdraw or amend its Complaint, Dawgs forged ahead, requiring Defendants to incur substantial time and expense to fully brief the Rule 11 Motion and Motion to Dismiss.  Dawgs also served substantial discovery on the Defendants, which resulted in hundreds of hours of attorney and client time to collect, review and produce documents, and to prepare detailed interrogatory responses—exactly as Mr. Mann said it would.  Yet Dawgs made, at best, token compliance with its own discovery obligations.  It produced only 64 pages of documents, none of which supported its salacious allegations and claims.  Dawgs provided circular and conclusory interrogatory responses, which it never bothered to supplement or verify.  It pulled the plug on this case just before Defendants were set to take depositions.  In sum,

---

Footnote continued from previous page
Zulily's vendor portals through non-public (or not readily public) means.").  This was yet another allegation lacking any objective basis, made from whole cloth.

1    Dawgs never produced *any* evidence showing an objective basis for the key contentions underlying

2    its claims, used the pendency of the case as fodder for its PR and extortion campaign against Crocs,

3    and then tactically dismissed all claims before they could be tested.  This despite Dawgs's

4    characterization of the Rule 11 Motion as a "premature factual attack" and insistence that the "Court

5    should defer ruling on it until after trial."  ECF No. 19, at 2.

6        Rule 11 exists to prevent baseless filings and curb litigation abuses.  To that end, the Rule

7    requires attorneys to certify that all pleadings and other papers have a legitimate legal and factual

8    basis, and that they are not being presented "for a[n] improper purpose."  Fed. R. Civ. P. 11(b).

9    When a plaintiff "fail[s] to make the minimum required factual inquiring before the filing of the

10    complaint . . . [t]he appropriate sanction which [plaintiff] should pay for its violation of Rule 11 is

11    ***all of the expenses including attorney's fees***, incurred by each and every defendant herein . . . from

12    the time of the filing of the complaint."  *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287–88

13    (C.D. Cal. 1991) (emphasis added); *see also Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D.

14    Cal. 1985) (ordering plaintiff and his attorneys to pay "all of the reasonable expenses, including

15    reasonable attorneys' fees, incurred by defendants in the defense of this action" for their

16    "egregious" violation of Rule 11).

17        Dawgs's decision to file this lawsuit in the face of clear evidence and authority disproving

18    Dawgs's claims warrants sanctions for the fees that Defendants incurred in defending this suit.

19    Dawgs maintained the lawsuit for several months thereafter, causing Crocs to incur significant

20    expense.  During this time, Dawgs made a mockery of its discovery obligations while leveraging the

21    pending claims in PR statements, and Dawgs's CEO demanded that Crocs propose a "business

22    solution" to bring an end to the harassment of Crocs and its employees and officers.  This conduct

23    makes a sanctions award of fees and costs all the more reasonable.

24   **III.    DAWGS HAS VIOLATED 28 U.S.C. § 1927 BY MAINTAINING THIS BAD-FAITH LAWSUIT AND VEXATIOUSLY DRIVING UP COSTS.**

25

26        Not only did Dawgs file and maintain a lawsuit that had no factual or legal basis, it has done

27    so for improper purposes and in bad faith.  Dawgs's refusal to meaningfully engage in the discovery

28    process, and subsequent abandonment of the entire lawsuit "without prejudice" before Crocs's

motions could be ruled on, or testimony under oath could be obtained to test Dawgs's allegations, is objective evidence that Dawgs never seriously intended to pursue the claims. Nevertheless, Dawgs opposed Defendants' motions for dismissal and sanctions, and caused the parties to proceed to discovery. Mr. Mann's letter reveals that Dawgs's tactic was to drive up Crocs's litigation costs by suing Crocs and individuals affiliated with it in this Court, in the hope that it will lead to a favorable settlement in the Colorado action.[3] The letter also shows that Dawgs is using this lawsuit, and others, as a pretext to smear Crocs and its employees in the media—which conduct it threatened to continue until Crocs met Dawgs's demands. This is bad faith.

Under 28 U.S.C. § 1927, the Court may award sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Section 1927 sanctions are warranted upon a finding of "subjective bad faith," including when an attorney "knowingly or recklessly raises a frivolous argument." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996); *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). Like Rule 11, Section 1927 authorizes courts to issue blanket awards "if the entire course of proceedings was unwarranted and should not have been commenced or pursued." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017); *see also Haynes v. City & Cty. of San Francisco*, 474 F. App'x 689 (9th Cir. 2012) (affirming § 1927 sanctions for all fees incurred after the point when "it was clear that none of the plaintiff's remaining claims against any of the defendants had merit"); *Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) (award of all reasonable attorneys' fees and expenses incurred by defendants supported by § 1927, because maintaining the action "in the face of the facts known or available to [plaintiff] both before and after the filing of defendants' motions multiplied the proceedings unreasonably and vexatiously").

Dawgs's conduct confirms that this lawsuit—in its entirety—was an act of bad faith. Dawgs

---

[3] There was no need for Dawgs to file a new lawsuit in this forum, as Dawgs asked the Colorado Court in April of this year for leave to re-plead a claim of tortious interference against Crocs in light of Ms. Lawrie's communications with Zulily and the subsequent cancellation of Dawgs's sales events. Colorado Action, ECF No. 520. Rather than asking that the claims asserted here also be added to the Colorado Action, Dawgs opted to then file a separate lawsuit here to increase litigation pressure on Crocs.

filed suit, not to resolve a bona bide grievance, but rather to gain leverage over Crocs in an attempt to force Crocs to agree to "an equitable business solution."  That Dawgs harassed and slandered Crocs and its employees in its Complaint is bad enough.  The fact that it *continued* to pursue this lawsuit for four months thereafter—*after* multiple rounds of briefing and imposing substantial discovery burdens on Defendants—shows the extent to which Dawgs unreasonably and vexatiously multiplied the proceedings.  Maximum sanctions under § 1927 are warranted.

## IV.    DAWGS IS SUBJECT TO SANCTIONS UNDER THE COURT'S INHERENT POWERS AS WELL.

The Court's inherent power offers further authority to sanction Dawgs for its bad-faith conduct.  Inherent power sanctions are available where the Court "finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (explaining courts' inherent power to sanction conduct that abuses the judicial process, such as when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons").  Such sanctions "are also justified when a party acts *for an improper purpose*," including attempts "to gain a tactical advantage in another case." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (emphasis in original).  It can also include the filing and continued prosecution of a frivolous action which the plaintiff "was clearly aware lacked any merit." *Sheppard v. United States*, No. CV-S-02-0920-LRH-PAL, 2003 WL 23112849, at *2 (D. Nev. Dec. 1, 2003).

As under Rule 11, the Court has authority to award *all* of a defendant's fees "in one fell swoop" when the plaintiff files and pursues a lawsuit in bad faith. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187-88 (2017) ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award."); *Chambers*, 501 U.S. at 51, 57-58 (affirming blanket award of all fees where non-movant's "entire course of conduct" was "part of [a] sordid scheme," characterized by "relentless, repeated fraudulent and brazenly unethical" conduct).  Similarly, "if . . . a lawsuit, absent litigation misconduct, would have settled at a specific time," the Court may issue blanket fee awards under its inherent powers. *Goodyear*, 137 S. Ct. at 1188.  Such an award is reasonable here.

As explained above, Dawgs's conduct belies any attempt to show good faith in its pursuit of this lawsuit.  Mr. Mann's letter shows that Dawgs's objective in filing this lawsuit was to gain leverage over Crocs in the pre-existing Colorado action.  This was the *third* time Dawgs had brought a suit in this Court for this improper purpose, only to dismiss it without prejudice.  *See* Section I.A., *supra*.  By subjecting Crocs and its employees to litigation costs and disparagement in the media, Dawgs was making good the threats in its letter if Crocs did not pay Dawgs off.  This is bad faith, pure and simple.  The court has authority under its inherent powers to sanction Dawgs for this misconduct.

## V.   DEFENDANTS REQUEST THE COURT AWARD ALL OF DEFENDANTS' COSTS AND FEES INCURRED WITH THIS ACTION, AND REQUIRE DAWGS TO APOLOGIZE AND SEEK PERMISSION PRIOR TO FILING ANY FURTHER LAWSUITS IN THIS JURISDICTION.

Under three separate bases set forth above, the Court has ample authority to award Defendants all fees and costs incurred to defend against this lawsuit.  The accompanying declaration of Mr. Berta sets forth the specific nature and extent of the fees Defendants seek by this Motion. Defendants seek fees for: fully briefing Defendants' Rule 11 Motion for Sanctions, fully briefing Defendants' Motion to Dismiss, preparing the Defendants' initial disclosures, participating in the parties' Rule 26(f) discovery conference, preparing the parties' proposed discovery plan, preparing the parties' stipulated protective order, preparing affirmative discovery served on Dawgs, responding to written discovery from Dawgs, conducting substantial factual investigations and document collections, reviewing documents for production, coordinating work performed by Defendants' e-discovery vendor, reviewing and analyzing Dawgs's written discovery responses and document collections, participating in discovery-related meet-and-confer discussions with Dawgs's counsel, preparing for depositions, preparing subpoenas to third parties, addressing a third party subpoena served by Dawgs on Zulily, working with an expert retained by Defendants in connection with Dawgs's trade dress claims, preparing *pro hac vice* applications, and engaging in client correspondence and other case management.  Berta Decl. ¶¶ 6-16.  For these efforts, Defendants seek to recover a total of $177,958.45 in attorneys' fees for services rendered through the end of October, with a supplementation to follow once billing records are available for services provided in

1    the month of November prior to Dawgs's dismissal of the lawsuit. *Id.* ¶¶ 17, 33.

2           As explained in the declaration, Defendants were conservative in their calculations, and

3    omitted certain categories of fees and expenses, including work performed by paralegals and

4    attorneys who played a supporting role in the above-mentioned efforts, the innumerable hours spent

5    by Defendants (and Crocs personnel in particular) investigating facts and collecting documents in

6    response to Dawgs's claims, or fees incurred by Defendants' retained experts. *Id.* ¶¶ 18-19.  The

7    requested fees also exclude time spent partially on other litigation matters involving the same

8    parties. *Id.* ¶ 20.

9           Defendants separately seek to recover costs incurred as a result of work performed by

10   Blackstone Discovery, Defendants' e-discovery vendor, as well as costs to access a database

11   compiling actual attorney hourly rates, which Defendants used in connection with this Motion. *Id.*

12   ¶¶31-32 & Ex. 2.  For these costs, Defendants seek to recover a total of $77,388.70. *Id.* ¶33.

13          In addition, and consistent with the Rule 11 Motion, Defendants seek non-monetary

14   sanctions as well, including a public retraction and apology to the individually named Defendants

15   wrongly accused of "hacking."  The individual Defendants have seen their integrity questioned in

16   the press, have been contacted by reporters seeking comment, and fear they will suffer reputational

17   harm in their personal and professional lives.  The full extent of this cannot be calculated.  As

18   would be expected, a lawsuit against an individual affects credit ratings, loan approvals and job

19   prospects—effects that are only magnified by press coverage of the individuals that states that they

20   have been accused of "corporate espionage" and that criminal charges are a possibility. *See, e.g.*,

21   ECF No. 15-11 (article from Boulder, Colorado-based The Daily Camera, covering the filing of

22   Dawgs's lawsuit and noting the potential for individual criminal liability).  Google searches for the

23   individual Defendants' names continue to bring up these alarming headlines describing "corporate

24   sabotage," yet there is no reference to the fact that Dawgs has now quietly abandoned this lawsuit

25   without ever proving a single one of its outlandish allegations.  A public retraction and apology

26   would not erase the hardship inflicted on the individual Defendants, but would at least be a start to

27   helping them put this sordid affair behind them.

28          Defendants also request that the Court bar Dawgs from refiling this lawsuit, or bringing

1    another lawsuit in the District against Crocs or persons affiliated with it, without express advance

2    permission of the Court.  Dawgs put Defendants to this expense and caused them harm, even though

3    it knew it had no basis for its claims, but then dismissed this case "without prejudice," thus

4    purposefully preventing Defendants from clearing their names.  Dawgs's attempt to game the

5    system—by a tactical dismissal without prejudice to preserve its ability to file these baseless claims

6    in the future—is the third time Dawgs has filed and abandoned "without prejudice" claims against

7    Crocs in this District.  This is a sufficient basis for this Court to put restrictions on Dawgs's ability

8    to misuse the judicial process in the future.  *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047,

9    1065 (9th Cir. 2007) (confirming that courts have the authority under the All Writs Act, 28 U.S.C.

10   § 1651(a), to issue pre-filing orders against vexatious litigants; affirming such an order).  Here, all

11   factors weigh in favor of such an order: (1) Dawgs is on notice of its vexatious conduct and has the

12   opportunity to respond to this Motion; (2) there is a clear and adequate record of Dawgs's serial

13   abuse of legal process; (3) the Court made, in Dawgs's 2016 declaratory judgment action,

14   "substantive findings about the frivolous or harassing nature of [Dawgs's] litigation," and can make

15   further findings now; and (4) the order can be "narrowly tailored" to the pattern Dawgs has

16   employed in this Court against Crocs and persons affiliated with it.  *See id.* at 1057.

17   **VI.    CONCLUSION**

18           For the reasons set forth above, Defendants respectfully request that the Court: (1) grant this

19   Motion under Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers; (2) award Defendants all

20   of their costs and attorneys' fees incurred in responding to this lawsuit; (3) require Dawgs to issue a

21   full retraction and apology to the individuals named in this lawsuit; and (4) issue an order requiring

22   prior approval of the Court to re-file this lawsuit, or to bring other claims against Crocs or persons

23   affiliated with it in this District.

24

25

26

27

28

DEFENDANTS' MOTION FOR SANCTIONS

1   Dated:  December 1, 2017

2

Respectfully,

JOLLEY URGA WOODBURY HOLTHUS & ROSE
WILLIAM R. URGA

3

4

ARNOLD & PORTER KAYE SCHOLER LLP
MICHAEL A. BERTA

5

By:_____ */s/ Michael Berta*_____
                 MICHAEL BERTA

6

7

Attorneys for Defendants CROCS, INC.; KIM
LAWRIE; ERIK RUFER; and KELLY GRAY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SANCTIONS

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on this 1st day of December, 2017, I caused the document entitled

3   **DEFENDANTS' MOTION FOR SANCTIONS** to be served on the parties in this action via the

4   Court's CM/ECF System.

5                                                    By:  */s/ Michael Berta*
                                                          Michael Berta
6                                                         ARNOLD & PORTER KAYE SCHOLER LLP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28