JOEL Z. SCHWARZ
Nevada Bar No. 9181
DICKINSON WRIGHT, PLLC
8363 W. Sunset Rd., Suite 200
Las Vegas, Nevada 89113
T: 702.550.4437
F: 844.670.6009
E: jschwarz@dickinsonwright.com

CHRISTOPHER HELLMICH (appearing *pro hac vice*)
HELLMICH LAW GROUP, PC
5753-G E. Santa Ana Canyon Rd., #512
Anaheim Hills, CA 92807
T: 949.287.5708
F: 714.974.7733
E: chellmich@hellmichlaw.com

*Attorneys for* Plaintiff U.S.A. Dawgs, Inc

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CROCS INC, a Delaware corporation, KIM LAWRIE, a Washington resident, ERIK RUFER, a Washington resident, and KELLY GRAY, a Colorado resident.<br><br>Defendants. | Case No. 2:17-cv-02054-JCM-NJK<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF No. 44) |

Plaintiff U.S.A. Dawgs, Inc. ("Dawgs") hereby opposes defendants Crocs, Inc. ("Crocs"), Kim Lawrie, Erik Rufer, and Kelly Gray's (collectively, "Defendants") motion for sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and the Court's inherent powers. "Motion", ECF No. 44.

## I.    INTRODUCTION

Defendants' Motion is baseless and fails for the simple reason that defendants concocted and executed a ridiculous and truly unbelievable sanctions trap. This is not the first case in which a litigant executed such a trap as a means to secure a strategic or monetary advantage, but like the other Courts

1    who have considered this unsavory tactic, this Court should also reject this thinly veiled ploy.

2        Starting in April, just after Zulily produced two emails to Dawgs suggesting that defendants

3    gained unauthorized access to Dawgs' confidential computer data hosted by Zulily, Dawgs began

4    asking both Zulily and Crocs to provide any exculpatory evidence or information that would alleviate

5    Dawgs' fears that its data was compromised. Zulily's counsel proffered an unsubstantiated statement

6    claiming that Dawgs' data was not improperly accessed. For several months, and through numerous

7    communications, Dawgs repeated its request and said that if it could not gather such evidence it

8    would have no choice but to file suit. Crucially, Crocs and Zulily are the only parties who possess

9    evidence demonstrating whether Defendants' actions were lawful or not. Dawgs' pre-litigation

10   investigation was therefore at the mercy of whether Crocs and Zulily (who appears to be operating at

11   Crocs' behest) would forthrightly respond to Dawgs' inquiries.

12       Crocs and Zulily knew that the central email chain that Zulily provided to Dawgs, in which

13   Lawrie says that she can get into "Dawgs' event" and which provided the basis for Dawgs' computer

14   fraud claims, was materially incomplete. The email Zulily produced, and which Dawgs appended to

15   the Complaint (ECF No. 1-1, at 3), contained an indication that an image appeared as part of Lawrie's

16   signature block, but the image was not produced. Crocs produced the complete email for the first

17   time on November 7, 2017 in response to Dawgs' discovery requests. It revealed that the missing

18   image was not part of Lawrie signature block but was instead a screen-shot that Lawrie took of

19   Zulily's website. The image showed that in fact both Crocs' and Dawgs' upcoming events were

20   simultaneously displayed on Zulily's New Tomorrow page. This demonstrated that Lawrie could have

21   lawfully accessed Dawgs' event. Crocs had the complete email all along and knew that Dawgs was

22   operating without complete information.

23       Defendants refused Dawgs' request that they explain why they did not produce the email

24   earlier. Defendants could have easily produced the complete email at any time to end this matter.

25   Defendants failed to produce the email: (i) during Dawgs' pre-litigation investigation, (ii) with their

26   first Fed. R. Civ. P. 11 sanctions motion, (iii) in their motion to dismiss, (iv) during the Fed. R. Civ. P.

27   26(f) conference, (v) with their Fed. R. Civ. P. 26(a)(1) disclosures, or (vi) voluntarily at any time.

28   Defendants did not do so because they knew that as soon as they produced the complete email

                                                    2

Dawgs would abandon its claim. This is not conjecture. Immediately upon providing the complete email Defendants wrote to Dawgs and cited the complete email as the basis for demanding Dawgs dismiss its computer fraud claims with prejudice. The sanctions trap was sprung. By that time, Defendants' counsel had unnecessarily racked up massive expenses that they intended all along to foist off onto Dawgs by means of the instant motion. The stunning irony is that Defendants' sanctions trap necessarily required Defendants to vexatiously prolong and multiply these proceedings. The litigation was an unnecessary waste of resources, but it was caused by Defendants' deceitful conduct in intentionally withholding exculpatory evidence they knew would settle the matter.

From a procedural perspective, Defendants' Fed. R. Civ. P. 11 motion is fatally defective for two reasons. First, Defendants did not serve the motion on Dawgs pursuant to the 21-day safe harbor requirement, which is strictly enforced in the Ninth Circuit. Second, the Ninth Circuit prohibits the filing of a Fed. R. Civ. P. 11 motion after the case has been dismissed. These are procedural defects that Defendants cannot cure and doom that portion of their motion. However, because the motion's other bases for sanctions, *i.e.*, 28 U.S.C. § 1927 and the Court's inherent powers, inextricably entwine Defendants' factual bases for Fed. R. Civ. P. 11 sanctions, Dawgs will address the underlying facts because Defendants' unnecessary gamesmanship acts as a defense to each theory they advance for claiming sanctions.

Defendants' §1927 motion for sanctions against Dawgs' counsel fails because Defendants unprofessionally (and maybe unethically) sandbagged Dawgs by failing to reasonably comply with Dawgs' pre-litigation investigation. Defendants compounded their unscrupulous conduct by forgoing every opportunity in this litigation to produce the complete email until forced to do so in response to Dawgs' discovery requests. Defendants' demand that Dawgs dismiss this action concurrent with the production of the complete email reveals that Defendants and their counsel knew that the complete email would promptly cause Dawgs to dismiss its action – which it did. Dawgs' counsel cannot possibly be sanctioned for engaging in bad faith conduct when he repeatedly asked Defendants to produce any exculpatory evidence and stated that the production of it would likely end the case. It was Defendants' counsel who stonewalled Dawgs' pre-litigation investigation and then dragged their heels in delaying until the last possible moment the production of the complete email. The lawsuit

ended exactly when and how Defendants wanted it to end, and that is the hallmark of the sanctions trap.

For the same reasons, the Court cannot find that Dawgs' conduct was in bad faith and the Court should refuse to award sanctions pursuant to its inherent powers. Defendants' unclean hands in creating the underlying facts supporting this motion precludes defendants from claiming the equitable relief they seek. Like other plaintiffs ensnared in a sanctions trap, the fact that Dawgs promptly dismissed the action when Defendants produced the complete email reveals it did not have the intent to multiply the proceedings or act vexatiously.

The strategic objective of this sanctions trap is to secure a finding that Dawgs acted in bad faith as a vexatious litigant so Crocs can serially use such a finding in the ongoing litigation between the parties. For its part, the monetary sanction Defendants hope to claim is designed to starve Dawgs of needed resources for defending itself in those matters. Sanctions traps are necessarily improper because it is Dawgs who has been injured by this unnecessary action.

## II.   DEFENDANTS WITHHELD THE DISPOSITIVE EMAIL AS AN IMPROPER SANCTIONS TRAP

### A.   Defendants Stonewalled Dawgs' Pre-Litigation Investigation

In responding to Defendants' first sanctions motion, Dawgs explained the timeline supporting its pre-litigation investigation (for judicial economy, Dawgs incorporates but does not repeat here). Opp. (ECF No. 19), at 11-14. Further, Dawgs appended to its opposition its letter to defendants responding to their putative motion during the 21-day safe harbor period. Opp. Ex. 1. That letter included all of the correspondence (email and letter) Dawgs' counsel sent to both Zulily and Crocs seeking to understand whether defendants gained unauthorized access to Dawgs' computer data. Dawgs repeatedly explained to both Crocs and Zulily that if Dawgs could verify its computer data was not accessed by Crocs, its direct commercial competitor and opponent in 11 years of litigation, it would not bring the lawsuit.[1] Importantly, Dawgs' letter provided yet another plea to Crocs for assistance to ascertain whether its data was improperly accessed:

> Dawgs again requests that Crocs assist Dawgs in asking Zulily to produce the evidence it has been seeking all along to demonstrate that Crocs did not illegally access Dawgs'

---

[1] *See, e.g.*, Opp. at 2-3, 12, 13; Opp. Ex. 1 pp. 3, 4, 5, 16, 24, and 26.

computer data. As Dawgs has said since April, **if Dawgs can verify its computer data was not compromised there is no need to proceed with its CFAA claims and it will dismiss them**.

Opp. Ex. 1, at 5 (emphasis added)

Dawgs' pre-litigation investigation was necessarily confined to Zulily and Crocs, but neither of them would provide any evidence corroborating that Dawgs' data was not unlawfully accessed. The contrary is true. When Zulily suggested a method by which Crocs may have gained access to Dawgs' event, Dawgs tried to replicate that procedure but was unable to do so. Opp. Ex. 1 at 3, 5. Zulily's counsel attempted to demonstrate how Zulily's website worked, but Dawgs' counsel quickly showed the limitations of the website. *Id.* at p. 4. Dawgs repeatedly asked Zulily counsel for a teleconference to include a Zulily computer technician to demonstrate how Crocs could have lawfully gained access to Dawgs' event, but Zulily refused. *Id.* Dawgs told Zulily that it tried every method that Zulily suggested as a means by which Crocs could have accessed Dawgs data, but that it was unable to replicate it. *Id.* at p. 5. Zulily refused to provide any further assistance. Hellmich Decl. ¶ 4. In that Crocs is a substantial Zulily vendor and the matter involved Crocs, Dawgs also turned to Crocs and asked Crocs to intervene with Zulily to provide Dawgs with information that would corroborate Zulily's contention that Crocs lawfully accessed Dawgs' data.[2] *Id.* at 6. Crocs refused to do so or even respond to Dawgs' request.

Dawgs reasonably believed that if Zulily or Crocs had any evidence corroborating Zulily's claim that Crocs did not gain unauthorized access to Dawgs' data they would readily produce it to avoid unnecessary litigation. Hellmich Decl. ¶ 10; Mann Decl. ¶ 7, 10 - 11. The simple fact that Zulily and Crocs refused to provide any exculpatory evidence that should have been readily available—and now we know it was—strongly suggested that Zulily's unsubstantiated claim that Dawgs' data was not comprised was false. This was particularly true because Dawgs' sales event was not approved at the

---

[2] Counsel for Zulily and Crocs are collaborating on some level as Defendants' motion contained a letter from Zulily to Dawgs counsel, which could only come from Zulily. Hellmich Decl. ¶ 16. Further, defendants reference a conversation they had with Zulily's counsel in which Zulily informed Defendants that Dawgs had withdrawn its subpoena served on Zulily. Ex. 1. Defendants also seek to collect fees for the time they spent collaborating with Zulily. ECF No. 46. Moreover, as explained in the Complaint Zulily canceled Dawgs sales event at Crocs request and eventually refused to sell any of Dawgs' footwear that competes with Crocs'. Cmplt. ¶¶ 9 and 50.

time Lawrie's email says she accessed it and it would have been a violation of Zulily's terms and conditions to publish Dawgs' event before it was approved. Opp. at 2 and 11.

Dawgs had exhausted every possible means available to it to investigate its computer fraud claims because the only two entities who knew what happened and possessed the evidence refused to disclose it to Dawgs. Hellmich Decl. ¶ 7; Mann Decl. ¶ 7.

**B.      Defendants Withheld Exculpatory Evidence as Part of a Sanctions Trap**

On August 14, 2017, Defendants provided Dawgs with notice of its intent to file a Fed. R. Civ. P. 11 motion. Conspicuously absent from the putative Fed. R. Civ. P.  11 motion was Lawrie's complete email. Had Defendants included the email in their Fed. R. Civ. P. 11 motion Dawgs would have taken the same actions it took when they eventually produced it, including dismissing the action. Hellmich Decl. ¶ 11; Mann Decl. ¶ 9, 11. Defendants knew if they included Lawrie's email in the Rule 11 motion, and because none of them had yet responded to the Complaint, that Dawgs could have simply amended its Complaint to remove the computer fraud claims. Fed. R. Civ. P. 15 (a)(1)(A). Instead, Defendants withheld the email as part of the sanctions trap.

On August 21, 2017, Defendants filed a collective motion to dismiss. ECF. No. 10. Once again, Defendants intentionally omitted any reference to the fact that the Lawrie email in the Complaint was incomplete. The same is true of their reply filed on September 12, 2017. ECF. No. 17.

On September 20, 2017, counsel for Dawgs and the Defendants convened the Fed. R. Civ. P. 26(f) and LR 26-1(a) meeting. At no time did Defendants' counsel disclose the existence of the complete Lawrie email. Hellmich Decl. ¶ 9. The parties exchanged Fed. R. Civ. P. 26(a)(1)(A) initial disclosures on October 4, 2017, and Defendants again failed to produce the complete Lawrie email or describe it in its submission. Ex. 2.

On November 6, 2017, Defendants produced unverified interrogatory responses. Defendant Lawrie stated that she lawfully accessed Dawgs' prospective event by the New Tomorrow webpage. As corroboration for her testimony, she referenced her complete email by bates number. Ex. 3. This was the first time that Lawrie offered any statement regarding her activities on November 8, 2016. Hellmich Decl. ¶ 16.

On November 7, 2017, Defendants finally produced the complete email demonstrating that Lawrie did in fact see both Crocs' and Dawgs' events on Zulily's New Tomorrow webpage at 7:34 a.m. The differences between the email that Zulily produced and the complete email are dramatic.



Ex. 10 – Zulily email.

Ex. 11 – Crocs email.

By virtue of Defendants' silence, Dawgs was led to believe the email Zulily produced without the screen-shot of the New Tomorrow webpage was a complete version of Lawrie's email. Hellmich

7

Decl. ¶¶ 9; Mann Decl. ¶¶ 9. Certainly, Dawgs saw indications that an image was missing, but Dawgs reasonably believed it was an image associated with her signature block.[3] *Id.* Nothing in the email, or in any communication with Zulily or Crocs, suggested that the email Zulily produced to Dawgs was incomplete. *Id.* Defendants, however, all knew that the email Dawgs was relying on was incomplete.

Defendants knew the complete Lawrie email was dispositive of Dawgs' computer fraud claims because concurrent with the production of the email defendants wrote to Dawgs and identified by bates number the complete email and demanded Dawgs dismiss the action with prejudice. Ex. 4. Noticeably absent from Defendants' letter was any explanation accounting for why they did not produce the dispositive email sooner.

Dawgs immediately responded and asked Defendants why they did not produce the complete email sooner as they "apparently all along had Lawrie's email containing a screen-shot of the New Tomorrow webpage as it seemingly appeared on November 8, 2016, and [defendants] elected to not disclose it until now". Ex. 5. Dawgs also asked Defendants to produce the interrogatory verifications so that Dawgs could be certain that each Defendants' written responses were provided under oath. *Id.* And, Dawgs asked Defendants to produce the Lawrie email in native format.

Continuing their gamesmanship, Defendants refused to respond to nearly all of the points Dawgs raised in its letter. Ex. 6. Dawgs repeated its requests. Ex. 7. Defendants again refused to explain why they did not produce the email earlier and stated they would not provide the email in native format. Ex. 8. Dawgs explained that because Defendants refused to produce the Lawrie emails in native format, or all of the metadata associated with the email, and would not provide the basis upon which counsel could represent they were authentic and had not been altered, then Dawgs could not agree to dismiss the computer fraud claims with prejudice. Ex. 9. Dawgs asked Defendants if they would agree to the dismissal of the computer fraud claims without prejudice. *Id.* While Defendants said they would respond to Dawgs' request regarding the dismissal they never did. Hellmich Decl. ¶ 14.

---

[3] Notably, the Crocs logo in her signature block was missing from the Zulily produced email.

The only economical and efficient way to secure a dismissal without prejudice of the computer fraud claims was to dismiss the entire action pursuant of Fed. R. Civ. P. 41(a)(1)(A)(i), which is what Dawgs did on November 17, 2017. ECF No. 42.

## III.   LEGAL STANDARD

### A.   Legal Standard for Sanctions Pursuant to Rule 11

Defendants' motion fails to establish the standard of review and fails to identify the exact provision(s) of Fed. R. Civ. P. 11 it claims were violated. This omission fails to give Dawgs adequate notice to mount a proper defense and Defendants' motion should be denied on that basis alone. The distinction is important because "[t]he identity of the person(s) subject to sanctions depends on the nature of the Rule 11(b) violation. For a violation of Fed. R. Civ. P. 11(b)(2), as distinguished from Fed. R. Civ. P. 11(b)(3), sanctions must be imposed on the offending party's attorney, not the party itself." *Sokolowski v. Adelson*, No. 214-CV-111-JCM-NJK, 2016 WL 344508, at *3 (D. Nev. Jan. 27, 2016) (citing *Chien v. Skystar Bio Pharmaceutical Co.*, 256 F.R.D. 67, 72 (D. Conn. 2009) (citing Fed. R. Civ. P. 11(c)(5)(A) for proposition that "[s]anctions for the legal insufficiency or frivolousness of the complaint must run against the attorney alone.")).

If the Fed. R. Civ. P. 11 violation alleged is to the Complaint, *i.e.*, Fed. R. Civ. P. 11 (b)(2), the "district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). A Complaint is deemed "frivolous" only if it "is both baseless and made without a reasonable and competent inquiry." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

Alternatively, Fed. R. Civ. P. 11(b)(3) provides that, by submitting a paper to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] ... the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery....".

A Court may impose Fed. R. Civ. P. 11 sanctions if a party files a paper with the court for an improper purpose, or if the filing is frivolous. *G.C. & K.B. Investments, Inc. v. Wilson,* 326 F.3d 1096,

1109 (9th Cir. 2003). This inquiry is determined by using an objective standard at the time the paper was filed. *Id.; Operating Engineers Pension Trust v. A–C Co.,* 859 F.2d 1336, 1344 (9th Cir.1988).

"When sanctions are sought under Rule 11, counsel must comply with Rule 11's "safe harbor" provision." *Bridgewater v. Hayes Valley Ltd. P'ship,* No. C 10-05436 SBA, 2012 WL 2426325, at *2 (N.D. Cal. June 26, 2012) (quoting *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (2001) (the procedural requirements of Fed. R. Civ. P. 11(c)'s safe harbor provision are mandatory)). "The failure to comply with the procedural requirements of Rule 11(c)(2) precludes a party from obtaining an award of sanctions." *Id.* (citing *Radcliffe,* 254 F.3d at 789).

### B.    Legal Standard for Sanctions Pursuant to 28 U.S.C. § 1927

Under Section 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"The Ninth Circuit conducts a subjective inquiry into the viability of § 1927 sanctions; while knowing or reckless litigation conduct is sanctionable, merely negligent conduct is not." *Ruiz v. APCO Const.,* No. 2:10-CV-1312-JAD-GWF, 2014 WL 4402379, at *1 (D. Nev. Sept. 5, 14 2014). Prior to issuing an attorney fee award under Section 1927, a district court must make a finding of subjective bad faith. *In re Keegan Management Co.,* 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986). "The bad faith requirement sets a high threshold." *Oliver v. In-N-Out Burgers,* 945 F. Supp. 2d 1126, 1129 (S.D. Cal. 2013) (citing *Primus Auto. Fin. Servs. v. Batarse,* 115 F.3d 644, 649 (9th Cir.1997)).

No sanctions are warranted when an attorney's legal arguments are merely incorrect. *Herb Reed Enterprises, Inc. v. Bennett,* No. 2:10-CV-1981-JCM-RJJ, 2012 WL 5989632, at *6 (D. Nev. Nov. 29, 2012). Notably, Section 1927 sanctions are only available "once a lawsuit has begun," and do not apply to an initial pleading. *Keegan,* 78 F.3d at 435.

### C.  Legal Standard for Sanctions Pursuant to the Court's Inherent Powers

"Federal courts also have inherent power to impose sanctions against attorneys and parties for bad faith conduct in litigation." *Oliver*, 945 F. Supp. at 1129 (citing *Chambers v. NASCO,* 501 U.S. 32, 43 (1991)). The Court's inherent powers permit it to award attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive purposes." *Chambers*, 501 U.S. at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59 (1975)). "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980)). "Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting, as it did in this case." *Id.* (citing *Chambers*, 501 U.S. at 47). Bad faith is present when "a litigant is substantially motivated by vindictiveness, obduracy, or mala fides," even if the litigants raised a colorable claim. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quoting *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980).

"Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express,* 447 U.S. at 764.

## IV.  ARGUMENT

### A.  Defendants' Rule 11 Motion Is Procedurally Defective and Must be Denied as a Matter of Law

Absent from Defendants' motion is any indication that they complied with the procedural requirements of requirements of Fed. R. Civ. P. 11(c)(2), namely the 21-day "safe harbor" provision[4]. This is because defendants did not comply with that requirement because they could not since the

---

[4] Nor did Defendants state that they complied with these same requirements when they filed their first Fed. R. Civ. P. 11 motion.  ECF No. 15. "Rule 11 sanctions are also inappropriate in this case because In–N–Out has not shown that it complied with Rule 11's safe harbor provision." *Oliver*, 945 F. Supp. 2d at 1131 (citing Fed.R.Civ.P. 11(c)(2); *Barber v. Miller,* 146 F.3d 707, 710–11 (9th Cir.1998)). In that instance, Defendants filed a motion that improperly varied from the one they served during the safe-harbor period. The served motion repeatedly cited to a declaration from attorney Berta, but no such declaration was produced. Conversely, the motion Defendants actually filed referred to a declaration from attorney Kent that was included with the filed motion. The failure to file the exact motion – with referenced declarations – that was served at the beginning of the safe harbor period is fatal. *MetLife Bank, N.A. v. Riley,* No. 3:10-CV-00122-ECR, 2010 WL 4024898, at *3 (D. Nev. Oct. 13, 2010).

case was dismissed before they sought Fed. R. Civ. P. 11 sanctions. Indeed, it is impermissible to file such a sanctions motion after the case has been dismissed.

> A motion for sanctions violates the safe-harbor provision if it is filed after the complaint has been dismissed. *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC,* 339 F.3d 1146, 1150 (9th Cir. 2003) (quoting *Barber,* 146 F.3d at 710). This is because such timing does not give the offending party the opportunity to withdraw the offending pleading and thereby escape sanctions. *Id.* Because Sato did not serve his Rule 11 motion until after the complaint was dismissed, the Court cannot award sanctions pursuant to his motion.

*Matsumaru v. Sato,* 521 F. Supp. 2d 1013, 1016 (D. Ariz. 2007).

Not only did defendants improperly file their Fed. R. Civ. P. 11 motion after Dawgs dismissed its complaint, but defendants failed to serve it on Dawgs 21 days before they filed it. Hellmich Decl. ¶ 20. The Ninth Circuit has long held that the safe harbor provisions are mandatory and a failure to comply with them requires the denial of the Fed. R. Civ. P. 11 motion. *Radcliffe,* 254 F.3d at 789. That should be the result here.

**B.    Dawgs' Dismissal Divests the Court of Jurisdiction Over the Instant Motion**

While there is precedent for a Court to retain jurisdiction over a sanctions motion filed before a case is dismissed (*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)), Defendants offer no authority for the Court to entertain such a motion pursuant to Section 1927 or the court's inherent powers after a plaintiff dismisses the action pursuant to Fed. R. Civ. P. 41(a)(1). Indeed, the Court is divested of jurisdiction once the plaintiff voluntarily dismisses its case and it should not entertain this motion. *Boyd v. Avanquest N. Am. Inc*, No. 12-CV-04391-WHO, 2014 WL 5205619, at *2–3 (N.D. Cal. Oct. 14, 2014) ("once the action is dismissed the court may no longer exercise jurisdiction over it.") (citing *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077-78 (9th Cir. 1999); *see also Commercial Space Mgmt. Co.*, 193 F.3d at 1080 ("It follows from *American Soccer* and a long line of ancestors that the district court has no role to play once a notice of dismissal under Rule 41(a)(1) is filed. The action is terminated at that point, as if no action had ever been filed.").

**C.    No Sanctions Are Warranted Because Defendants' Claim Is Based on Their Deplorable Sanctions Trap**

Unfortunately, litigants have long been trying to sandbag one another by withholding evidence to gain a tactical advantage in litigation, but when a Court finds that such unprofessional (if not

potentially unethical) conduct is used as a basis for claiming sanctions they uniformly reject the demand. Defendants had multiple opportunities to produce the dispositive email, but they did not because they wanted to set this sanctions trap.

Dawgs and its counsel forthrightly conducted a thorough investigation, but were stonewalled by Crocs' and Zulily's refusal to produce the exculpatory email. Dawgs specifically requested any exculpatory evidence that would corroborate the unsupported statement from Zulily's outside counsel that Dawgs' data was not compromised. *See* footnote 1, *supra*. Dawgs repeatedly stated that if such evidence was produced it would not file its computer fraud claims—and even in its letter response to Defendants' first sanctions motion Dawgs told defendants that if they produced exculpatory evidence it would dismiss this lawsuit. Opp. Ex. 1, at 5. Defendants could have prevented this lawsuit or ended at any time and they refuse to provide any explanation for their obvious gamesmanship.

### 1.   Defendants refusal to provide material information during pre-litigation investigation cannot be held against the Dawgs or its counsel.

The Seventh Circuit reviewed a case with facts similar to those present here and rejected an award of sanctions. In *Kraemer v. Grant Cty.*, 892 F.2d 686, 689 (7th Cir. 1990), a woman claimed that her deceased boyfriend's parents conspired with the local sheriff to wrongfully remove her property from the couple's home and caused her eviction. Kraemer hired a lawyer to make an administrative claim for damages. When that was denied, the lawyer retained an investigator to assess the veracity of Kraemer's claims. The boyfriend's relatives refused to cooperate or respond to inquiries about the events and the investigator was "unable to confirm or discredit any part of Kraemer's story". *Kraemer*, 892 F.2d at 688. Kraemer filed a 42 U.S.C. § 1983 action against the sheriff and her boyfriend's relatives. Through discovery it was learned there were lengthy discussions between defendants that suggested a conspiracy existed, but Kraemer was unable to develop sufficient facts to establish state action sufficient to defeat summary judgment. *Id.* Upon dismissal a defendant sought Fed. R. Civ. P. 11 sanctions against the lawyer for filing a frivolous complaint, which the trial court granted.[5] *Id.*

---

[5] *Kraemer* was litigated prior to the 1993 amendment to Fed. R. Civ. P. 11 that instituted the 21-day safe harbor period, which is how the defendant was able to seek sanctions under that rule after the dismissal.

The Seventh Circuit noted that the sanctions analysis focused on the reasonableness of the attorney's "prefiling research into the facts of the case". *Id.* at 689. The reason is because the Court quickly rejected the argument that the claims were frivolous because "if [the attorney's] version of the facts was correct" the claim was meritorious. *Id.* The plaintiff lost the case because she could not prove the necessary state action, "not because the law did not provide a federal remedy for the wrongs she alleged in her complaint." *Id.* In other words, if the plaintiff proved the facts she alleged in the complaint the claim could not be deemed frivolous.

The same is true in this case. If Dawgs proved all of the facts it alleged in its complaint it would have a "legal basis for a federal claim" and its claims could not be deemed frivolous. *Id.*; accord *O'Hagin's, Inc. v. UBS AG*, No. SACV-160716-DOC-JEMX, 2017 WL 2992445, at *4 (C.D. Cal. Apr. 3, 2017) citing *Greenberg. v. Sala*, 822 F.3d 882, 885 (9th Cir. 1987) ("the 'improper purpose' analysis is not necessary because a non-frivolous complaint cannot be said to be filed for an improper purpose."); *see also Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537–38 (9th Cir. 1986) ("[A] complaint which complies with the 'well-grounded in fact and warranted by ... law' clause cannot be sanctioned ... under Rule 11, regardless of the subjective intent of the attorney or litigant.").

Turning to the sufficiency of the pre-litigation investigation in *Kraemer*, the Seventh Circuit held "It is not necessary that an investigation into the facts be carried to the point of absolute certainty." *Kraemer*, 892 F.2d at 688. In *Kraemer* the plaintiff had to establish a conspiracy between her boyfriend's parents and the sheriff, but "the defendants refused to cooperate with the investigator. We cannot insist that a lawyer abandon his client's cause simply because the investigator was unable to obtain the cooperation of the prospective defendants." *Id.* at 690. Without the prospective defendants' cooperation, Kraemer's lawyer had "only two options" "give up" her claim or file the lawsuit "and try to develop the necessary facts through discovery." *Id.*

The *Kraemer* Court held that the facts that the lawyer developed in discovery "are irrelevant to the reasonableness of his filing the complaint, but the fact that he had to use discovery to learn them is relevant. If discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct that discovery." *Id.* In the end, the Court found that Kraemer's lawyer "took all of the steps that he reasonably could have taken before filing suit to determine the

14

truth of Kraemer's allegations. He should not be sanctioned for turning to the judiciary, whose function is to find the truth, when his own resources failed." *Id.*

There can be no serious dispute that Dawgs and its counsel conducted a reasonable prefiling investigation to the fullest extent of their resources.[6] The fact that Defendants refused to produce the exculpatory evidence until it was compelled to do so in discovery demonstrates that Defendants engaged in bad faith and that Dawgs' could not have done more to investigate its claim before filing the action.

> **2.      Dawgs' demand for readily available exculpatory evidence was reasonable**

In another case, no sanctions were levied against an attorney when he filed suit and refused to dismiss it simply because the defendant claimed that it was an improper party. Plaintiff's lawyer "attempted repeatedly to resolve this issue" and said "he would dismiss [the party] from the complaint if the defendant would provide an affidavit substantiating" its lack of involvement. *Hyman v. Borack & Assocs., P.A.*, No. 8:12-CV-1088-T-23TGW, 2012 WL 6778491, at *4 (M.D. Fla. Dec. 17, 2012), *report and recommendation adopted,* No. 8:12-CV-1088-T-23TGW, 2013 WL 68534 (M.D. Fla. Jan. 4, 2013). The defendant refused to provide the information until required to do so in discovery and once it was provided the plaintiff dismissed the party. "Therefore, there is no probative evidence upon which to conclude that the plaintiff intended to harass or needlessly increase the costs of the litigation. If anything, BLG contributed to any multiplication of proceedings by refusing to provide the requested evidence until it was mandated to do so in discovery." *Id.*

Dawgs and its counsel's conduct was less demanding than that approved of in *Hyman*. Dawgs repeatedly told Defendants it would not bring the lawsuit if they would provide simple corroboration that Zulily's counsel's statement that Dawgs' data was not improperly access was truthful. *See* footnote 1, *supra*. Dawgs did not demand an affidavit like in *Hyman*, just corroboration, which like in *Hyman* was readily available. Tellingly, the *Hyman* Court was not at all troubled by the fact that the plaintiff

---

[6] However, the prelitigation investigation is irrelevant if the complaint is well-founded. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (an attorney "cannot be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry.").

refused to rely on the defendant's unsupported statement that it was an improper party and the plaintiff's lawyer was justified to seek a sworn statement to that effect.

The fact that Zulily and Defendants could have provided exculpatory evidence, but refused to do so was circumstantial evidence that Dawgs could rely upon in believing that its data was compromised and its computer fraud claims were meritorious. *O'Hagins, Inc.*, 2017 WL 2992445, at *3 ("circumstantial evidence is treated as evidentiary support for Rule 11 purposes." citing *Rachel v. Banana Rep. Inc.*, 831 F. 2d 1503, 1508 (9th Cir. 1987) (reversing sanctions because of existence of circumstantial evidence plaintiffs relied upon in their complaint.)).

### 3.   Defendants cannot be rewarded for their sanctions trap

In *Unigen Pharm., Inc. v. Walgreen Co.*, No. C07-0471RAJ, 2008 WL 11344929, at *1 (W.D. Wash. July 3, 2008), the plaintiff notified defendant Walgreen that it intended amend its complaint to add a party who allegedly manufactured a product Walgreen was selling that infringed the plaintiff's patent. Walgreen responded that the party was not the manufacturer of the product, but refused to name the actual manufacturer or provide any other information. After the Court granted the motion for leave to amend to add the party the plaintiff asked Walgreen to disclose the name of the manufacturer, which it eventually did. Walgreen sought sanctions against the plaintiff, but the Court denied the motion. "While it is merely professionally questionable to withhold basic case information from opposing counsel for no apparent reason, it is legally objectionable to use that strategy as a sanctions trap." *Id.* at *2 ("professional courtesy, if not professional responsibility, dictates that Walgreen's counsel" should have disclosed the manufacturer's identity). The Court found it unacceptable that Walgreen withheld the readily available information so it could then serve a sanctions motion, which increased the costs of the litigation "rather than simply provide the manufacturer's name and put an end to this sideshow." *Id.* No different than in this case, the Court there found that "Nothing in the record gives the slightest hint as to what legitimate purpose this gamesmanship might have served." *Id.*

16

1
2

### 4.   Defendants' unclean hands bars sanctions pursuant to the Court's inherent powers

3      "It has been recognized that 'a court's reliance upon its inherent authority to sanction derives

4   from its equitable powers to control the litigants before it and to guarantee the integrity of the court

5   and its proceedings.'" *S. Shore Ranches, LLC v. Lakelands Co., LLC*, No. 1:09-CV-105 AWI DLB, 2010

6   WL 2546112, at *4 (E.D. Cal. June 18, 2010) (quoting *First Bank v. Hartford Underwriters Ins. Co.,* 307

7   F.3d 501, 512 (6th Cir.2002) (citing *Chambers,* 501 U.S. at 43)).

8      In *S. Shore Ranches* the court granted sanctions pursuant to its inherent powers, but later

9   learned that the party had failed to reveal material information leading up to the award of sanctions.

10   The Court then applied "a form of unclean hands" to revoke the sanctions award. *Id.*, at *4. The

11   unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion in refusing

12   to aid the unclean litigant." *Id.* (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S.

13   806, 814 (1945)). "The equitable doctrine is designed to prevent the Court from becoming a

14   participant in or abettor of inequitable conduct." *In re Rose*, 565 B.R. 178, 183–84 (Bankr. D. Nev.

15   2017). "What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring

16   the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights

17   against the [other party]." *S. Shore Ranches*, 2010 WL 2546112, at *4 (quoting *Republic Molding Corp. v.

18   B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963)).

19      In this case, when the Court resolves the instant motion for sanctions pursuant to the Court's

20   inherent power, the Court should consider whether Defendants have acted with unclean hands. There

21   can be no serious dispute that Defendants withheld readily available exculpatory evidence until

22   obligated to produce it in response to Dawgs discovery requests. That conduct serves as the basis for

23   Defendants' motion and it is the means by which they vastly increased their attorneys' fees by

24   unnecessarily multiplying these proceedings. All of this could have been avoided if it were not for the

25   "pointless shenanigans underlying [defendants'] Rule 11 motion." *Unigen Pharm., Inc.*, 2008 WL

26   11344929, at *3.

27      Sanctions pursuant to the Court's inherent powers are "an extraordinary remedy, one to be

28   exercised with extreme caution." *In re Keegan,* 78 F.3d at 437. Defendants' sandbagging of Dawgs and

its counsel should not give rise to sanctions. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.").

      **5.**        **There is no basis to sanction Dawgs' counsel pursuant to Section 1927**

Defendants seek sanctions against Dawgs' counsel, but they fail to specify the bad faith conduct counsel allegedly committed. Mot. at 8-10. In fact, Defendants improperly seek Section 1927 against Dawgs when the statute does not apply to parties, but rather only to counsel. Nor should Dawgs' conduct, such as writing a letter to settle its claims with Crocs or filing earlier lawsuits, be attributed to Dawgs' counsel who did not participate in those events or decisions. Hellmich Decl. ¶ 17 -18. The only conduct that could be attributable to counsel is filing the lawsuit, but Dawgs' counsel was in the same position as lawyers in *Hyman* and *Kraemer*. That is, when Defendants refused to produce readily available exculpatory information counsel could either advise Dawgs to drop what appeared to be a viable claim "or he could file a complaint on [its] behalf and try to develop the necessary facts through discovery." *Kraemer*, 892 F.2d at 690. Nor was Dawgs' counsel required to accept the unsubstantiated representation of Zulily's counsel that Dawgs' data was not compromised. *Hyman*, 2012 WL 6778491, at *3.

Defendants argue that Dawgs engaged in misconduct by filing its computer fraud claims in this court as a means to multiply the litigation. Motion, at 10. But, the majority of Defendants' motion to dismiss was that the Court could not exercise personal jurisdiction over the individual defendants here. ECF No. 10 at 4-7. Dawgs demonstrated that jurisdiction was proper in this forum because, in part, it was injured here. ECF No. 13 at 5-9. Dawgs could not make the same showing as to the individual defendants in Colorado where it is not based, where not all Defendants reside, and where the injury did not occur. Nevada was the only forum where this lawsuit could have been brought against all of the Defendants. Defendants vaguely suggest that Dawgs did not meaningfully participate in discovery, but they fail to explain that Dawgs did begin producing the limited information it possessed as to the computer fraud claims. Hellmich Decl. ¶ 19. That the evidence supporting that claim resided mainly with Zulily and Crocs is a result of the nature of the claim.

A decision to sanction a party or counsel must be "made with restraint and discretion," *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2nd Cir. 2000), and only in "rare and exceptional" cases, *Operating Engineers Pension truest v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). This Court must be mindful that while a "sanction serves an important purpose, it is a tool that must be used with utmost care and caution because of the devastating impact it can have on a lawyer's reputation. *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180 (N.D. Ill. 2014) (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir.1993)).

**D.  Defendants' Arguments as to Dawgs' Conduct in Other Cases and Settlement Discussions Are Improper.**

Defendants' hyperbolic smear job starts with improperly invoking Dawgs' alleged conduct in other cases, but it is strictly impermissible for the Court to consider matters outside of this litigation when assessing a sanctions motion. "The Court may only sanction a party based on activities that occurred in the case before the district court." *Oliver*, 945 F. Supp. 2d at 1131 (citing *GRiD Sys. Corp. v. John Fluke Mfg. Co.,* 41 F.3d 1318, 1319 (9th Cir.1994)). "Therefore, the Court does not consider In–N–Out's arguments related to Plaintiff's counsel's activities in other cases, and Plaintiff's objections are moot." *Id.*

Defendants also fail to disclose that counsel in this case were not at all involved in the filing of the two previous cases cited.[7] Moreover, Dawgs has moved for reconsideration of the Court's order in Case No. 16-CV-1694 based on an intervening change in the law. *See* Case No. 16-CV-1694, ECF No. 43. That motion remains pending.

Similarly, it is improper for Defendants to attempt to twist Dawgs' settlement letter as a means of extortion. Motion at 2, 7-8, 10, and 12. How exactly are parties supposed to settle cases if they are not permitted to freely communicate if they are in fear than any such settlement communication will be distorted as a threat or as having a malicious purpose? *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their

---

[7] Dawgs' current counsel did appear in Case No. 16-cv-1694, but only after Crocs filed its sanctions motion.

communications.'"); *accord*, *Branch Banking & Tr. Co. v. Pahrump 194, LLC*, No. 2:12-CV-1462-JCM-VCF, 2015 WL 1877422, at *2 (D. Nev. Apr. 23, 2015)(Mahan, D.J.). The Court will see for itself that the letter was a continuation of a discussion that Mr. Mann had with Mr. Rees, Crocs' CEO, during the summer. Earlier in the summer, Mr. Rees became Crocs' CEO and Mr. Mann did not believe that he fully appreciated either Dawgs' claims or costs for the litigation, that both he and Mr. Rees lamented. Nor can there be anything wrong about Dawgs expressing that it will not simply surrender or be driven out of business, as Crocs has enthusiastically done to the other nearly dozen or so competitors it sued in the Colorado action.

### E. Defendants Cannot Recover Attorney Fees and Costs Because They Did Not Comply With Local Rule 54

Even if the Court were inclined to grant sanctions in favor of defendants, defendants cannot recover their attorneys' fees because they failed to comply with Local Rule 54-14. In addition to the requirements imposed by Fed. R. Civ. P. 54(d), Local Rule 54-14 rule sets forth further information that "a party must submit to a trial court in this district for the court's consideration of a motion for attorneys' fees." *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, Case No. 2:16-CV-1694 JCM (PAL), 2017 WL 3299394, at *5 (denying Crocs' motion for attorney fees because Crocs "failed to satisfy Local Rule 54-14(b)(3)"). "The movant has an initial burden of production to produce 'satisfactory evidence that the fee requested is reasonable.'" *Mann v. Morgan Stanley Smith Barney, LLC*, Case No. 2:15-cv-00217-GMN-PAL, 2016 WL 1254242, at *4 (D. Nev. Mar. 28, 2016) (quoting *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016)).

Here, defendants failed to provide several of the required items. Defendants provided no itemization of the work performed. Local Rule 54-14(b)(1) requires that a motion for attorneys' fees must include "a reasonable itemization and description of the work performed." That itemization includes a number of hours spent on a given task. *See Mann*, 2016 WL 1254242, at *5 (evidence supporting the hours worked "must include 'detailed documentation of the hours worked'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). For each attorney, defendants submitted only a total number of hours worked and a general description of what the attorney worked on. However, there is no information related to the number of hours spent by each attorney on a given task. Even block

billing for each day is inappropriate. *See Mann*, 2016 1254242, at *6. Defendants failed to even provide that level of detail.

Defendants also failed to submit other required information including at least "the preclusion of other employment" by any of the attorneys for whom it seeks fees, "the undesirability of the case," or "awards in similar cases." These are each required under Local Rule 54-14. LR 54-14(b)(3)(E), (J), and (L); *Branch Banking and Trust Co. v. Pahrump 194, LLC*, No. 2:12-CV-1462 JCM (VCF), 2017 WL 536837, at *2 (D. Nev. Feb. 9, 2017) (denying motion for attorneys' fees where movant failed to sufficiently discuss awards in similar cases).

Where a party fails to provide all of the information required by Local Rule 54-16(b) and (c), its failure "constitutes a consent to the denial of the motion." LR 54-16(d). Defendants' motion should be denied on this basis alone. *See* LR 54-16(d); *Knickmeyer v. Nevada ex rel. Eighth Judicial District Court*, Case No. 2:14-CV-231 JCM (PAL), 2017 WL 936624, at *2–3 (D. Nev. Mar. 9, 2017) (denying motion for attorneys' fees for failure to provide required information); *Anderson v. White*, Case No. 2:13-CV-2097 JCM (VCF), 2016 WL 3396932, at *2 (D. Nev. June 14, 2016) (same); *Branch Banking and Trust Co. v. Jones/Windmill, LLC*, No. 2:12-CV-452 JCM (GWF), 2015 WL 894529, at *5 (D. Nev. Mar. 3, 2015) (same); *Lerner v. O'Connor*, No. 2:14-CV-341 JCM (VCF), 2015 WL 789665, at *2–4 (D. Nev. Feb. 25, 2015) (same).

Defendants' failure to provide the aforementioned items is particularly important here due to the inflated nature of the fees Defendants' requested. The Court must be able to evaluate whether the fee for each task is reasonable. *See, e.g.*, *Thompson v. Am. Family Mut. Ins. Co.*, No. 2:09-CV-905 JCM (RJJ), 2011 WL 4729873, at *2 (D. Nev. Oct. 5, 2011) (finding 30 hours of attorney time for a reply brief to be unreasonable). Here that is impossible. But it seems unlikely that the fees billed for each task were reasonable. For example, five attorneys participated in Defendants' Reply to their own Rule 11 motion. Three attorneys participated in drafting a discovery plan. Four attorneys drafted Defendants' initial disclosures (and yet, as discussed above, they still failed to identify or produce the email they relied on in their previous motion papers). Moreover, several of the attorneys claim fees for undefined "other tasks." None of this can be deemed to be reasonable based on the information submitted.

Defendants also fail to provide adequate support for their billing rates. "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for *similar work* performed by attorneys of comparable skill, experience, and reputation.'" *Knickmeyer*, 2017 WL 936624, at *2 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (emphasis in original); *Gonzalez-Rodriguez v. Mariana's Enterprises, et al.*, No. 2:15-CV-152 JCM (PAL), 2016 WL 386870, at *8 (D. Nev. July 14, 2016).

Defendants provide a spreadsheet of billable hour rates for attorneys in Nevada, but it is largely unhelpful. Apparently, defendants want the Court to believe that each of these lawyers would strictly apply their published rates when charging defendants to perform the routine work involved. But, there is no evidence to support such an assumption. Consider that Defendants did not even disclose the hourly rates for the associates working for its local counsel as a cross-check. Nor do defendants explain why they did not assign work to their Nevada attorneys that likely would have reduced costs.

Defendants ostensibly cite to certain cases as a means of demonstrating it complied with LR 54-14(b)(3)(L) as being awards for "similar work". ECF No. 46 p. 10-11. However, they do not support Defendants' effort to claim a super-premium for the attorneys here. At best, the cases defendants present suggest this Court has awarded associate time at $250/hour, and no more than $450 per hour for partner time. *See, e.g.*, *Wysocki v. Dourian*, No. 2:17-CV-00333-JAD-NJK, 2017 WL 4767145, at *3 (D. Nev. Oct. 20, 2017).

In addition to its attorneys' fees, defendants also fail with respect to their requests for costs. For example, they seek more than $75,000 in costs, but these include several improper items including more than $8,000 in undocumented "professional services," $5,000 for "forensic services," $50,000 in data processing (without any support for whether this cost is reasonable), and $495 in conducting computer research. Apart from the lack of support for whether these fees are reasonable, Local Rule 54-11 provides that "computer research fees," "fees for investigative or paralegal services" and "fees for general office overhead" are not ordinarily taxable.

# V.       CONCLUSION

Defendants should not be rewarded by improperly setting a sanctions trap with having their fees and costs paid for by Dawgs, who was actually injured by Defendants' unnecessary multiplication of the proceedings. Indeed, it is Dawgs who should be awarded sanctions as a result of Defendants' dilatory conduct in withholding readily available evidence that could have avoided this entire matter. For the reasons stated herein, Dawgs requests the Court deny defendants' motion for sanctions.

Dated:  December 15, 2017                Respectfully submitted,


/s/ Christopher W. Hellmich
Christopher Hellmich (SBN 224169)
HELLMICH LAW GROUP, PC
5753-G E. Santa Ana Canyon Rd, #512
Anaheim Hills, CA 92807
T: 949.287.5708
F: 714.974.7733
E: chellmich@hellmichlaw.com
(Appearing *pro hac vice*)



JOEL Z. SCHWARZ
Nevada Bar No. 9181
E: jschwarz@dickinsonwright.com
JOANNA M. MYERS
Nevada Bar No. 12048
E:  jmyers@dickinsonwright.com
DICKINSON   WRIGHT,   PLLC8363   W.
Sunset Rd., Suite 200
Las Vegas, Nevada 89113
T: 702.550.4437
F: 844.670.6009

*Attorneys for: Plaintiff U.S.A. Dawgs, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017, a true and correct copy of the foregoing was filed via the CM/ECF System and was served upon all attorneys of record who have entered an appearance in this case.

_/s/ Christopher W. Hellmich_
Christopher Hellmich