JOLLEY URGA WOODBURY HOLTHUS & ROSE
WILLIAM R. URGA (Nev. Bar No. 1195)
wru@juww.com
330 S. Rampart Blvd., Suite 380
Las Vegas, NV 89145
Telephone:      702.699.7500
Facsimile:      702.699.7555

ARNOLD & PORTER KAYE SCHOLER LLP
MICHAEL A. BERTA (admitted *pro hac vice*)
michael.berta@apks.com
SEAN M. CALLAGY (admitted *pro hac vice*)
sean.callagy@apks.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:      415.471.3100
Facsimile:      415.471.3400

Attorneys for Defendants
CROCS, INC. a Delaware corporation;
KIM LAWRIE; ERIK RUFER;
and KELLY GRAY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation, | Case No.: 2:17-cv-02054 |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS** |
| v. | |
| CROCS, INC., a Delaware corporation, KIM LAWRIE, a Washington resident, ERIK RUFER, a Washington resident, and KELLY GRAY, a Colorado resident, | Date:<br>Time:<br>Judge:            Hon. James C. Mahan<br>Magistrate Judge:  Hon. Nancy J. Koppe |
| Defendants. | Trial Date:       None |

Defendants filed their renewed Motion For Sanctions (ECF No. 44, "Motion" or "Mot.") because, as discovery has confirmed, Dawgs's allegations of "hacking" never had objective factual support.  Similarly, Dawgs's corporate espionage narrative in support of its trade dress claims rested on nothing but hyperbole and known untrue statements about when Crocs began selling a sandal with a Z-shaped upper.

Dawgs's Opposition (ECF No. 47, "Opposition" or "Opp.") dodges the relevant issue—the lack of objective factual or legal support for its claims.  Likewise, Dawgs makes barely any effort to deny that this lawsuit was filed—like several before it—in an attempt to gain leverage over Crocs in a long-running lawsuit in Colorado.  That is reason enough to grant the Motion.

Rather than take on the actual issues, Dawgs spins a Dickensian tale of chicanery: a "deplorable sanctions trap" masterfully set by Crocs, Zulily, and the individual Defendants—and orchestrated by their conniving lawyers—to trick Dawgs into filing and litigating this baseless lawsuit.  The key premise of this fable is that Crocs knowingly and strategically sat on "exculpatory" information, hoping that Dawgs would take the bait and file suit—all so that Crocs could one day move for sanctions.  Alas, Dawgs laments, if only it had been given this single "exculpatory" document months ago, none of this drama would have happened.

This is creative lawyering indeed.  The documents Crocs produced show nothing more or less than the documents that Dawgs had at the beginning: that there was no "hacking," and that Dawgs's sales at Zulily were freely accessible to other vendors through the Zulily's New Tomorrow webpage.  The initial email on which Dawgs based its claims said as much.  The fact that there are *other* corroborating emails does not make those other emails "new" or "exculpatory"—it merely confirms that Dawgs's claims had no merit.  Nor do those corroborating emails excuse Dawgs for bringing meritless claims in the first place.  Lacking in Dawgs's Opposition is any showing that it had ***any evidence*** or ***any basis*** to believe in the truth of its "hacking" claims when it filed this case.  As the initial emails showed, there was no hacking.  Further confirmation of no hacking does not excuse a meritless claim.

Dawgs's Opposition is evidence that Dawgs will say anything, anywhere, without regard to the facts or truth.  At the same time Dawgs argues to this Court that there was "new" and

1    "exculpatory" evidence in this case, thus justifying Dawgs's late dismissal (albeit without

2    prejudice), its CEO Steven Mann has been telling the press the exact opposite: that Dawgs

3    "dismissed th[is] suit because he got what he wanted: documents proving Crocs had illegally

4    accessed the Zulily account." *See* Declaration of Michael Berta ("Berta Decl.") Ex. A. Dawgs's

5    CEO goes on to state that Dawgs intends to use this purported evidence of hacking "in his

6    company's ongoing 11-year lawsuit with Crocs in Colorado." *Id.* Which is it? Evidence of

7    hacking, as Dawgs broadcasts to the public? Or never-before-seen evidence of no hacking, as

8    Dawgs claims in its Opposition? Or, is it further confirmation of exactly what Dawgs has known all

9    along: that there was no hacking, as confirmed in the original emails. Dawgs's entire course of

10   conduct is evidence that it only filed this lawsuit to create a PR splash, sully the names of innocent

11   Crocs employees, and attempt to extort a favorable result in Colorado.

12       As further discussed herein, Defendants respectfully request that their Motion be granted.

13   **I.     DAWGS HAS NEVER SHOWN AN OBJECTIVE BASIS FOR THIS LAWSUIT.**

14       From the beginning, Dawgs's central allegations lack evidentiary support, in violation of

15   Rule 11(b)(3). Mot. at 2-3, 7-8; ECF No. 15, at 9-14. Dawgs's Opposition complains that only

16   now has Crocs provided evidence confirming that Dawgs's claims have no merit. But, that is an

17   irrelevancy that does not excuse Dawgs of its duty to only bring and pursue claims that have

18   objective, evidentiary support *ab initio*. *See Holgate v. Baldwin*, 425 F.3d 671, 676-77 (9th Cir.

19   2005) (affirming sanctions due to lack of factual support for allegations in complaint); *Telesaurus*

20   *VPC, LLC v. Power*, 888 F. Supp. 2d 963, 972 (D. Ariz. 2012) (that defendants had denied early

21   requests for discovery was "of no consequence" since Rule 11 "creates and imposes on a party or

22   counsel an affirmative duty to investigate the law and facts *before* filing") (internal quotations

23   omitted) (emphasis in original).

24       Repeating a familiar argument, Dawgs says Defendants' claimed failure to exculpate

25   themselves to Dawgs's satisfaction permitted it to invent "facts" from whole cloth, and is

26   "circumstantial evidence" that Dawgs's claims could have been meritorious. Opp. at 16. First, this

27   is an entire rewrite of the objective facts. As Defendants have shown from the outset of this case,

28   the documents in Dawgs's possession **when it filed the Complaint** stated that Ms. Lawrie saw

Dawgs's next-day sales information through Zulily's New Tomorrow webpage, thus establishing that there was no hacking.  ECF No. 15, at 7-8.  Additional emails confirming that fact are not "new" or "exculpatory"; they are confirmatory.  Nor was there "circumstantial evidence" that the original emails were susceptible to an inference of hacking, which was nowhere supported in the original emails.  Cases that note the permissibility of relying on circumstantial evidence deal with *actual* evidence of *actual* circumstances.  *See, e.g.*, *O'Hagins, Inc. v. UBS AG*, No. SA CV 16-0716, 2017 WL 2992445, at *3 (C.D. Cal. Apr. 3, 2017) (circumstantial evidence described in two *third-party* declarations sufficient to show plausible basis for allegations); *Rachel v. Banana Rep. Inc.*, 831 F. 2d 1503, 1508 (9th Cir. 1987) (no Rule 11 sanctions where circumstantial evidence suggested that defendant was proper party, including that defendant shared common officers, directors, and counsel with accused infringer and where accused infringer responded to demand letter on defendant's letterhead).  Dawgs's own authority confirms that Rule 11 requires "some credible evidence" in support of its statements.  *See O'Hagins*, 2017 WL 2992445, at *3 (internal quotations omitted).  Whether or not there is additional evidence that confirms no hacking simply does not mean that Dawgs had a basis for making its hacking claims in the first place.

Dawgs says the lack of supposed *exculpatory* evidence left it with a dilemma: "drop what appeared to be a viable claim," or "file a complaint . . . and try to develop the necessary facts through discovery."  Opp. at 18 (citing *Kraemer v. Grant Cty.*, 892 F.2d 686, 690 (7th Cir. 1990)).  That is not the analysis that Rule 11 requires.  Rather, it is Dawgs's counsel's duty to ensure that the factual allegations in the Complaint have objective support ***before a suit is filed***.  *See Dental v. City of Salem*, No. 3:13-cv-1659-HU, 2014 WL 4243777, at *5 (D. Or. Aug. 20, 2014) (Rule 11 requires a "good faith basis for complaints *before* they are filed" and forbids "using discovery for unknowing fishing expeditions") (citation omitted) (emphasis in original).[1]  Dawgs's hunch about "what appeared to be a viable claim" rested entirely on unfounded assumptions, and thus fails the

---

[1] If counsel believed that discovery was needed to support any contentions, such facts must be "specifically so identified."  Fed. R. Civ. P. 11(b)(3).  Dawgs never did this, and thus cannot avail itself of this provision.  *See Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 427 (N.D.W. Va. 2006).

1   standard.  *See Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1333 (S.D. Fla. 1990) (allegations

2   based on a "personal interpretation of the facts, conclusory allegations of fact, speculation,

3   suspicious, rumor, or surmise" fail Rule 11 objective standard) (emphasis omitted).  And, no part of

4   Dawgs's argument addresses the actual issue: that the original emails in Dawgs's possession stated

5   that Ms. Lawrie obtained the next-day sale information through the New Tomorrow website—not

6   through hacking.  Confirmatory information is not "new" and "exculpatory" and cannot prove that

7   Dawgs's original claims had merit.

8           Counsel tries to avoid responsibility by noting that he did not file Dawgs's prior lawsuits,

9   and did not pen the extortion letter from Dawgs's CEO.  Opp. at 18-19; ECF No. 47-1 ¶¶17-18.

10  That is not, to borrow a term, exculpating.  Dawgs's attorney personally conducted its pre-suit

11  investigation—so knew there was *zero* objective evidence of hacking—yet certified and filed a

12  Complaint containing false and speculative assertions with no legal support.  Counsel then refused

13  to withdraw the Complaint in light of Defendants' Rule 11 Motion, multiplying the proceedings.

14  That course of conduct warrants sanctions.[2]

15  **II.     RECENT STATEMENTS CONFIRM DAWGS'S IMPROPER MOTIVES.**

16          Dawgs offers no genuine rebuttal to evidence that this lawsuit was filed with an improper

17  purpose—a violation that warrants sanction under Rule 11(b)(1), § 1927, and the Court's inherent

18  powers.  Mot. at 7-11; ECF No. 15, at 15-18.  Dawgs's CEO Steven Mann sent an extortion demand

19  masked as a "settlement letter" to Crocs's CEO, revealing Dawgs's use of this and other lawsuits as

20  leverage to demand a payout from Crocs—or as euphemistically stated in the letter, "an equitable

21  business solution."  *See* Mot. at 6-7.  Dawgs says the letter was an attempt at settlement.  Opp. at

22  19-20.  But the letter speaks for itself.  Mr. Mann threatened "a dramatic increase in litigation

23  costs"—from Crocs having to defend itself, ***and*** dozens of other individuals, including those named

24  in this action—and a campaign in the press.  Mot. at 6.  These are threats of expense and harassment

25  _____

26  [2] Dawgs says it is "strictly impermissible" for the Court to consider Dawgs's pattern of baseless suits against Crocs and affiliated individuals.  Opp. at 19.  Not so.  Defendants seek a pre-filing order preventing Dawgs from filing any new case against the same parties without prior leave of the Court.  *See* Mot. at 12-13.  The Ninth Circuit recognizes that a party's litigation history is relevant to this analysis.  *Molski v. Evergreen Dynasty Corp.* 500 F.3d 1047, 1057-59 (9th Cir. 2007).

until Crocs gives Dawgs what it wants.

Mr. Mann himself provides further evidence of Dawgs's misuse of the legal process.  In comments to the press, Mr. Mann directly contradicts the claims in Dawgs's Opposition:

> Steven Mann, CEO of Dawgs, said **he dismissed the suit because he got what he wanted: documents proving Crocs had illegally accessed the Zulily account**.

> "We had reached out to Crocs and Zulily (and said) 'Please give us proof you were not in our portal,'" Mann said.  "We begged them for two months—they wouldn't do it, refused to supply (the documents).  It forced us to basically sue them for it.

> "After we sued them, they produced the exact documents we were asking for.  Once we received the evidence, we dropped the case."

> **Mann plans to use the evidence in his company's ongoing, 11-year lawsuit with Crocs in Colorado concerning Crocs cornerstone patent, as well as a new suit filed in August against 18 former and current Crocs executives alleging anti-trust violations.  He said he is not concerned about the sanctions motion, noting that Crocs has been handed "loss after loss" by the judicial system and patent office in regards to the protracted battle over its original clog design.**

Berta Decl. Ex. A.  Mr. Mann's statements stand in glaring contrast to Dawgs's assertion that Defendants have finally provided the "exculpatory" evidence Dawgs long sought.  Opp. at 2, 7-8. They are also clear evidence of Dawgs's improper motives in bringing this suit.  Mr. Mann publicly avows that Dawgs has used this lawsuit to obtain evidence for another case.  He continues to assert that there was hacking and that Crocs has produced evidence of hacking.  He also confirms that the dispute had nothing to do with the individual Defendants, and that Dawgs had no basis to subject them to the harassment of its false accusations.  This is bad faith.

## III.   DAWGS OFFERS NO LEGAL SUPPORT FOR ITS ACTIONS.

Dawgs's legal contentions were frivolous, in violation of Rule 11(b)(2).  Mot. at 3; ECF No. 15, at 12, 14-15.  Dawgs offers zero rebuttal to the showing that it had no legal basis to sue Erik Rufer and Kelly Gray for hacking, simply for being copied on an email thread.  *See* Mot. at 3; ECF No. 15, at 14-15.  Nor has Dawgs offered any basis for asserting an exclusive trade dress in something so generic as a Z-shaped upper.  *See* Mot. at 3; ECF No. 15, at 12.  And, Dawgs never justifies its conclusory "civil conspiracy" claim in light of clear authority that a company cannot conspire with its employees, or for "respondeat superior," which is not a cause of action.  ECF No.

10, at 19-21; ECF No. 17, at 11-12; ECF No. 15, at 15 n.8.  Dawgs takes on none of these issues, thus implicitly conceding that its claims were legally frivolous from the outset.

## IV.   DEFENDANTS DID NOT "ENSNARE" DAWGS IN A "SANCTIONS TRAP".

The centerpiece of Dawgs's Opposition is a defense that Defendants set a "sanctions trap" by withholding alleged "exculpatory" evidence, letting costs mount, and "sandbagging" Dawgs with the Motion.  Opp. at 4-9, 17-18.  This theory is irrelevant and factually false.

### A.   Dawgs Ignored All Objective Evidence That No Hacking Occurred.

First, Dawgs says that a screenshot of the "New Tomorrow" website in the version of Ms. Lawrie's November 8 email produced by Crocs—omitted from the version produced by Zulily more than 7 months  earlier—was radically new information, and that if Dawgs had seen it sooner, it would not have brought suit.  Opp. at 7-8.  But, the text of the email—which Dawgs had in March (Compl. ¶41)—*expressly* says that Ms. Lawrie saw Dawgs's sales event on Zulily's New Tomorrow webpage.  ECF No. 1-1.  What difference would a screenshot make, when Dawgs has long ignored the literal text of the email?

Further, Zulily actively responded to Dawgs's pre-suit demands, explaining how the New Tomorrow site worked and why Dawgs's hacking suspicions were baseless.  ECF No. 19-1 (collecting correspondences).  Dawgs has since conceded that Zulily gave a plausible explanation. ECF No. 13, at 3 (Dawgs agreeing that one "can click on the New Tomorrow tile and be taken to a page revealing the products the vendor will be offering the next day").  Dawgs ignored this and made endless demands from Zulily, *e.g.*, for internal computer logs, stating that only these would satisfy Dawgs.  *See, e.g.* ECF No. 15-9, at 2.  By disregarding objective facts, and alleging that hacking was "the only way" to learn about Dawgs's sales event (Compl. ¶47)—and that Zulily provided no "reasonably conceivable" explanation to the contrary (*id.* ¶54)—Dawgs violated Rule 11.  *See Truesdell v. Southern California Permanente Med. Group*, 293 F.3d 1146, 1153-54 (9th Cir. 2002) (affirming sanctions for certifying complaint with allegations that attorney knew or should have known were false); *Anderson v. Wal-Mart Stores, Inc.,* No. 2:10-CV-02235-GMN, 2011 WL 5598331, at *2 (D. Nev. Nov. 16, 2011) (finding Rule 11 violation where plaintiff's motion "exaggerated the facts, or the inferences that can reasonably be drawn from the facts").

1   Dawgs even alleged a second hacking incident in late November 2016 (Compl. ¶50), but its

2   interrogatory response revealed that this, too, was pure speculation.  Mot. at 5.  Dawgs also ignores

3   this in its Opposition.

4          Dawgs's conduct confirms that it does not really believe the November 8 screenshot was a

5   game-changer.  Dawgs first disagreed that the screenshot was exculpatory, and made trivial

6   demands of Crocs for metadata and native files.  And, wishing to reserve its ability to refile the

7   claims, Dawgs dismissed them *without* prejudice.  Why?  Because Mr. Mann apparently believed he

8   "got what he wanted: documents proving Crocs had illegally accessed the Zulily account," which he

9   "plans to use" in the Colorado lawsuits.  Berta Decl. Ex. A.  This flatly contradicts the Opposition,

10  and shows that Dawgs is using this litigation to seek a tactical advantage over Crocs in Colorado.

11         **B.     Dawgs's Speculation That Crocs Set A "Trap" Is Baseless, And Wrong.**

12         While Dawgs's "sanctions trap" defense is silly to begin with, a key assumption—that Crocs

13  knew about the screenshot months ago but tactically sat on it—is dead wrong.  Crocs first located

14  the screenshot in November, mere days before producing it, after it had finished collecting and

15  processing this and other documents.  Moreover, Crocs had no need to sit on anything.  The email

16  thread produced by Zulily in March, and Zulily's explanations in April and May, were all that

17  anyone needed to know that Dawgs's allegations were untrue.  Crocs had no need to dig for further

18  confirmatory evidence when Dawgs' narrative was a fiction from the beginning.  That Dawgs now

19  claims, with no evidence, that Crocs laid a trap to lure Dawgs into suing it and its employees, shows

20  that Dawgs has built its Opposition on pure speculation, just like its Complaint.

21         Finally, Dawgs's "sanctions trap" argument provides no explanation for its dismissal of ***all***

22  of its claims, including the two trade dress infringement claims.  Surely Dawgs would not abandon

23  claims it thought meritorious because of a screenshot having nothing to do with them.  That it did

24  so, and makes no attempt to explain why, is further proof that these claims were never pursued in

25  good faith—just padding for the "corporate espionage" narrative that Dawgs peddled to the press.

26         **C.     Dawgs's Cases Do Not Permit Attorneys To Make Knowingly False Allegations.**

27         Dawgs asserts that counsel was but a hapless, credulous attorney who had no reason to know

28  his client's claims and assumptions were wrong, and that in such circumstances, it is acceptable to

get creative with the facts.  Opp. at 13-15; ECF No. 47-1 ¶¶3-5.  Dawgs's central authority is *Kraemer*, 892 F.2d at 686, an out-of-circuit case that applies a superseded version of Rule 11.  It does not discuss, much less support, a "sanctions trap" defense.  It instead narrowly finds that a newly licensed attorney did not violate Rule 11 in filing a lawsuit that relied on his client's assertions that the local sheriff conspired with her deceased fiancé's family to evict her from her home.  *Id.* at 689-90.  Notably, the attorney's investigator ran into silence from the fiancé's family and the sheriff, and there was nowhere to turn for more information.  *Id.*  Thus, the attorney filed a civil rights lawsuit reciting his client's version of the facts.

When discovery failed to establish the alleged collusion, the trial court sanctioned the attorney for not adequately investigating the facts before bringing suit.  In reversing, the Seventh Circuit noted many facts that are not applicable here—including that conspiracy, by its nature, involves secret conduct which is nearly impossible to investigate, especially where the relevant players refuse to speak.  *Id.*  Also notable was that the plaintiff's investigator had uncovered nothing to undermine the plaintiff's story—indeed many of the allegations in the complaint were undisputed and were sufficient to withstand a motion to dismiss.  *Id.* at 688.  None of these facts apply here, where Dawgs had copious access to relevant information, including Zulily's document production in Colorado, Dawgs's own access to Zulily's vendor portal, and many letters and phone calls with Zulily.  *See* ECF No. 19-1.  And where ***all*** information available to Dawgs *before* filing suit showed that hacking had ***not*** occurred.[3]

Far from endorsing the "innocent heart and empty mind" narrative Dawgs has spun, courts routinely hold that Rule 11 sanctions are appropriate in these circumstances:

> The need for discovery to complete the factual basis for alleged claims is not an excuse to allege claims with no factual basis. . . .  For the purposes of Rule 11, the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though further facts must be obtained through discovery to finally prove the claim.  *However, a complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions.*

---

[3] *Kraemer* is also distinguishable because the plaintiff's attorney was a "fairly recent law school graduate," and the Court was loath to deter the filing of civil rights claims.  892 F.2d at 688.

1    *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990) (distinguishing *Kraemer*; emphasis added).  All of

2    the evidence available to Dawgs before filing this lawsuit contradicted its hacking claims, making

3    this case poles apart from *Kraemer*.[4]

4         Dawgs cites another out-of-circuit order for the proposition that it could demand exculpatory

5    evidence and flip the burden onto Defendants to exonerate themselves.  Opp. at 15 (citing *Hyman v.*

6    *Borack & Assoc., P.A.*, No. 8:12-cv-1088–T–23TGW, 2012 WL 6778491 (M.D. Fla. Dec. 17,

7    2012)).  But in that case, there was an *adequate factual basis* for the plaintiff's suit against the

8    named defendant—documents suggesting that it was the successor to the alleged wrongdoer,

9    supporting a claim for successor liability.  *Hyman*, 2012 WL 6778491, at *3.  This was not called

10   into question until the defendant moved to dismiss and sought sanctions.  *Id.* at *1.  The plaintiff

11   offered to dismiss if the defendant would provide an affidavit that it was not involved in the matter;

12   defendant refused and discovery proceeded.  *Id.* at *1, 4.  Later, the plaintiff voluntarily dismissed

13   upon receiving discovery responses showing that the defendant was not a proper party.  *Id.* at *4.

14        *Hyman* did not involve a plaintiff who, like Dawgs, knew its allegations were false as a

15   result of its pre-suit investigation, but ignored them.  And, Dawgs's vague demands for

16   "exculpatory" evidence from Zulily and Crocs bear no resemblance to the straightforward offer in

17   *Hyman*.  Dawgs demanded that Zulily and Crocs "corroborat[e]" that Dawgs's data had *not* been

18   improperly accessed, *i.e.*, prove a negative.  Opp. at 15.  Dawgs never said what would suffice,

19   other than computer logs from Zulily—which we now know was not based on objective facts, but

20   rather Dawgs's CEO speculation that such logs existed and would provide the definitive answer.

21   *See* ECF No. 47-2 ¶¶6-7 (Mr. Mann speculating that Zulily could have provided logs).

22        For similar reasons, Dawgs is not helped by *Unigen v. Walgreen*, where a court found that

23   the plaintiff sued the wrong party based on an inadequate pre-suit investigation, but also castigated

24   the defendant for withholding the identity of the true defendant, causing an "unnecessary dispute."

25   *Unigen Pharm., Inc. v. Walgreen Co.*, No. C07-0471RAJ, 2008 WL 11344929, at *2 (W.D. Wash.

26

---

27   [4] Dawgs also says it can avoid Rule 11 sanctions because if its allegations were true, they would
     state a claim.  Opp. at 14.  That is like saying that the Inquisition was not wrong to condemn Galileo
28   because if the Sun actually did orbit the Earth, Galileo would be a heretic.

July 3, 2008).  First, the court found that the plaintiff engaged in improper conduct for failing to conduct a "basic investigation before naming a party as a defendant" and then naming a defendant in an amended complaint without "adequate evidentiary support."  *Id*. at *2-3.  And, Dawgs's demand for "exculpation" was nothing like a simple request for the identity of a manufacturer. Regardless, the critical distinction is that the New Tomorrow screenshot did not *change* the known facts; it merely confirmed the objective facts Dawgs had from the beginning.

Finally, Dawgs has no basis to allege "unclean hands," given that its "sanctions trap" defense is false and legally baseless.  Opp. at 17-18.  Defendants have made clear to Dawgs since Day 1 *why* this lawsuit should never have been brought, while reserving their right to seek sanctions.  Dawgs ignored this, and instead chose to file the lawsuit, obtain press coverage, and besmirch innocent employees.  Dawgs's choice caused substantial fees for motion practice, discovery, and all other case management tasks.  And, as a result of Defendants' diligent efforts in compliance with the case schedule, Defendants served detailed interrogatory responses and made a major document production just one month after discovery began.  That is not unclean hands.

## V.    DEFEDANTS' PROCEDURAL CHALLENGES FAIL

### A.    The Motion Is Not Barred By Rule 11(C)(2).

Dawgs says Defendants cannot seek fees under Rule 11 because (1) they did not provide Dawgs with *another* 21-day safe harbor period before renewing their Rule 11 motion, and (2) the motion is barred *per se* because it was filed after dismissal.  Wrong.

Defendants need not satisfy a *second* safe harbor period because the Motion renewed arguments from their earlier-filed Rule 11 motion, which provided the requisite 21-day notice period.  *See Holgate*, 425 F.3d at 678 (no need for defendant to satisfy a second safe harbor period for re-urging earlier-filed Rule 11 motion); *Mitchel v. City of Santa Rosa*, No. C 09-05004 SI, 2010 WL 1688700, at *4 (N.D. Cal. Apr. 26, 2010), *aff'd in relevant part,* 476 F. Appx. 661 (9th Cir. 2011) (a party need not satisfy a second safe harbor period when it "renews a motion for sanctions based on conduct that was named in a previous motion.").  The Rule 11 violations at issue in this Motion are the same as before.  The only difference is that Defendants now have a calculation of fees and costs attributable to Dawgs's violations.

1    Nor is the Motion out-of-time.  Because Defendants are renewing a prior request, this case

2    differs from *Matsumaru*, where the defendant filed its *first and only* Rule 11 motion post-dismissal.

3    *Matsumaru v. Sato*, 521 F. Supp. 2d 1013, 1016 (D. Ariz. 2007).  And, consistent the Local Rules,

4    Defendants can reassert their arguments in a formal request after fees are assessed.  *See* LR 54-14(a)

5    (parties have 14 days *after* disposition of a case to submit fees motion).[5]

6    **B.    The Court Has Jurisdiction To Impose The Requested Sanctions.**

7    Dawgs next says its voluntary dismissal divested the Court of jurisdiction to hear this

8    Motion.  Opp. at 12.  Again, false.  The Supreme Court instructs that post-dismissal, courts retain

9    jurisdiction over "collateral issues," namely costs, fees, and sanctions.  *See Cooter & Gell v.*

10   *Hartmarx Corp.*, 496 U.S. 384, 395 (1990).  The Ninth Circuit has confirmed that holding.  *E.g.*

11   *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 445 (9th Cir. 1992) ("[I]t is clear that an

12   award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even

13   after being divested of jurisdiction on the merits.").  This principle is consistent with the Local

14   Rules, which permit fees motions *after* a case is terminated.  *See* LR 54-14(a).

15   **C.    Defendants Have Complied With Local Rule 54.**

16   Finally, Dawgs says Defendants did not comply with LR 54-14, and Dawgs demands a

17   meticulous itemization of hours by each attorney on every single task taken in defense of this case.

18   Opp. at 20.  The Supreme Court holds that where a blanket award is appropriate—*i.e.*, the lawsuit

19   was initiated "in complete bad faith" and "every cost of defense is attributable only to sanctioned

20   behavior"—courts need not engage in the "grind of segregating individual expense items . . . or

21   even categories of such items."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1188

22   (2017).  That principle applies here, since *none of Defendants' legal expenses* would have been

23   incurred but for Dawgs's violations.  *Id.*  Dawgs's own authority confirms as much.  *See Mann v.*

24   *Morgan Stanley Smith Barney, LLC*, Case No. 2:15-cv-00217-GMN-PAL, 2016 WL 1254242, at

---

[5] Dawgs says in passing that the first Rule 11 motion was fatally flawed because the version served
on Dawgs had a different attorney declarant than the final version.  Dawgs waived this argument by
not raising it in response to the motion.  *See Scott v. City of Phoenix*, No. CV-09-0875-PHX-JAT,
2011 WL 3159166, at *10-11 (D. Ariz. July 26, 2011).

1    *6-7 (D. Nev. Mar. 28, 2016) (awarding $14,652.00 in fees, despite records being in block format).

2    If the Court wishes to review detailed records, Defendants can submit them *in camera*.

3              As to the reasonableness of the reported billing rates (Opp. at 22), Defendants provided

4    numerous data points from multiple sources, including cases from this District. *See* ECF No. 46

5    ¶¶21-30.  The cases also allow the Court to ascertain "awards in similar cases."  Nor are the

6    requested costs "improper" or "unreasonable."  Opp. at 22.  Defendants seek e-discovery vendor

7    costs and fees to use proprietary data on attorney hourly rates.  Neither are barred under LR 54-11.

8    Nor can Dawgs complain about Defendants' e-discovery costs, when they are directly attributable

9    to Dawgs's refusal to withdraw the Complaint.  Dawgs waited to dismiss the case until ***after*** it

10   received Crocs's first document production, by which point much of the work to collect, process

11   and (in the case of archived information) forensically retrieve relevant materials had taken place.

12   **VI.    CONCLUSION**

13             For these reasons, Defendants respectfully request that the Court: (1)  award sanctions in the

14   amount of $301,855.50 (for $224,466.80 in attorneys' fees and $77,388.70 in costs);[6] (2) require

15   Dawgs to issue a public retraction and apology to the individual Defendants; and (3) prohibit Dawgs

16   from filing these or other claims against Crocs or individuals affiliated with it in this District

17   without prior leave of Court.

18

19   Dated:  December 22, 2017                   Respectfully,

20                                               JOLLEY URGA WOODBURY HOLTHUS & ROSE

21                                               ARNOLD & PORTER KAYE SCHOLER LLP

22                                               By:_____ */s/ Michael Berta*_____
                                                            MICHAEL BERTA

23                                               Attorneys for Defendants

24

25

26

_____

27   [6] As noted in the opening brief, Defendants' initial fees request did not include the month of
     November, as counsel's billings for that month had not been fully processed. *See* Mot. at 11-12;
28   ECF No. 46 ¶17.  Defendants' fees request has now been updated.  Berta Decl. ¶¶ 4-15.

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on this 22nd day of December, 2017, I caused the document entitled

4   **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS** to be served on the

5   parties in this action via the Court's CM/ECF System.

6

7                                          By:   */s/ Michael Berta*

8                                                Michael Berta
                                                ARNOLD & PORTER KAYE SCHOLER LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28