JOLLEY URGA WOODBURY HOLTHUS & ROSE
WILLIAM R. URGA (Nev. Bar No. 1195)
wru@juwlaw.com
330 S. Rampart Blvd., Suite 380
Las Vegas, NV 89145
Telephone: 702.699.7500
Facsimile: 702.699.7555

ARNOLD & PORTER KAYE SCHOLER LLP
MICHAEL A. BERTA (admitted *pro hac vice*)
michael.berta@arnoldporter.com
SEAN M. CALLAGY (admitted *pro hac vice*)
sean.callagy@aporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

Attorneys for Defendants
CROCS, INC., KIM LAWRIE, ERIK RUFER, and
KELLY GRAY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S.A. DAWGS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CROCS, INC., a Delaware corporation,<br>KIM LAWRIE, a Washington resident,<br>ERIK RUFER, a Washington resident, and<br>KELLY GRAY, a Colorado resident,<br><br>Defendants. | Case No.: 2:17-cv-02054-JCM-NJK<br><br>**ORDER GRANTING DEFENDANTS' THIRD MOTION FOR SANCTIONS (ECF. NO. 53)** |

Presently before the court is defendants Crocs, Inc. ("Crocs"), and Kim Lawrie, Erik Rufer, and Kelly Gray's (together, "Defendants") Third Motion for Sanctions. (ECF No. 53). Plaintiff U.S.A. Dawgs, Inc. ("Dawgs" or "Plaintiff") opposed (ECF No. 61), and Defendants filed a reply. (ECF No. 62). Defendants also filed a supplemental brief in support of its motion, as directed by the court. (ECF Nos. 63, 64). Dawgs filed a response to Defendants' supplemental brief. (ECF No. 65). On April 15, 2019, counsel for Dawgs and Defendants appeared and presented argument concerning the present Motion. (ECF Nos. 80 (minutes of hearing), 81 (transcript of hearing)). Consistent with the reasons stated on the record, which are incorporated herein, the court makes the following findings of fact and conclusions of law, and hereby GRANTS Defendants' Motion.

## I.     Legal Standard

### A.     *Rule 11*[1]

The main objective of Rule 11 is to deter baseless filings and curb litigation abuses. *Salman v. State of Nevada Comm. On Judicial Discipline*, 104 F. Supp. 2d 1262, 1270 (D. Nev. 2000). Further, Rule 11 addresses two separate problems: "first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment." *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir.1988) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)).

A court considering a Rule 11 motion must decide (1) whether a violation has occurred and, if so, (2) whether to impose sanctions. *Smith & Green Corp. v. Trustees of Const. Indus. & Laborers Health & Welfare Trust*, 244 F. Supp. 2d 1098, 1103 (D. Nev. 2003). Where "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

---

[1] Defendants also seek sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent powers. (ECF No. 44, at 13). As explained below, the court finds that Section 1927 and the court's inherent powers provide additional bases for the sanctions awarded.

When Rule 11(b) has been violated, the court may impose appropriate sanctions upon the attorneys, law firms, or parties that are responsible for the violation. *Smith & Green*, 244 F. Supp. 2d at 1103.  The identity of the person(s) subject to sanctions depends on the nature of the Rule 11(b) violation.  For a violation of Rule 11(b)(2), as distinguished from Rule 11(b)(3), sanctions must be imposed on the offending party's attorney, not the party itself.  *Chien v. Skystar Bio Pharm. Co.*, 256 F.R.D. 67, 72 (D. Conn. 2009) (citing Rule 11(c)(5)(A) for proposition that "[s]anctions for the legal insufficiency or frivolousness of the complaint must run against the attorney alone").

### B.  *Local Rule 54-14(b)(3)*

Local Rule 54-14(b)(3) sets out the following factors relevant to a motion for attorneys' fees:

(A) The results obtained and the amount involved;
(B) The time and labor required;
(C) The novelty and difficulty of the questions involved;
(D) The skill requisite to perform the legal service properly;
(E) The preclusion of other employment by the attorney due to acceptance of the case;
(F) The customary fee;
(G) Whether the fee is fixed or contingent;
(H) The time limitations imposed by the client or the circumstances;
(I) The experience, reputation, and ability of the attorney(s);
(J) The undesirability of the case, if any;
(K) The nature and length of the professional relationship with the client;
(L) Awards in similar cases; and
(M) Any other information the court may request.

LR 54-14(b)(3).

Information regarding reasonable attorneys' fees is based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.*  "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34.  Thus, the "court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460–61 (D. Nev. 1995).

After calculating the lodestar amount, the court can further adjust that figure by considering the factors laid out in *Kerr*, which materially mirror Local Rule 54-14. *Kerr v. Screen Extras Guild,*

*Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

**II.      Discussion**

   *A.      Rule 11 Violation*

The court finds that Dawgs did not have an objective basis for bringing this lawsuit. *Smith & Green Corp.*, 244 F. Supp. 2d at 1103. Dawgs alleged, *inter alia*, that "Crocs and its employees violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., in an intentional and successful effort to deprive Dawgs of sales of its products on the popular shopping website, www.zulily.com, owned by Zulily, LLC ('Zulily')." Compl. ¶ 6. Dawgs pointed to an email dated November 8, 2016, wherein Crocs employee and Defendant Kim Lawrie stated to Zulily that: (1) she noticed that "[Crocs is] on the new tomorrow [webpage] as well as Dawgs going live. They have an assortment of Crocs knock offs loaded into the event…" and (2) she could "get into" the Dawgs sales event. *Id.* ¶ 44. Dawgs alleged that "[t]he only way that Lawrie could 'get into Dawgs' event' would have been by unlawfully obtaining or accessing without authorization Zulily's computer system and/or Dawgs's vendor portal." *Id.* ¶ 47.

As Defendants note, before Dawgs filed this lawsuit, Zulily had explained in letters and discussions with Dawgs that Zulily's "New Tomorrow" website automatically makes each vendor's next-day sales event information, including the products which vendors would be promoting the next day, available to all participating vendors. (ECF No. 10, at 8; ECF No. 44, at 3). Zulily further repeatedly explained that it was not hacked. (ECF No. 15, at 8 n.2; ECF No. 15-9, at 2-4; ECF No. 44, at 3). It was therefore objectively baseless for Dawgs to assert that Ms. Lawrie could only "get into Dawgs' event" by unlawful means. *See Truesdell v. So. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153-54 (9th Cir. 2002). The May 16, 2017 letter from Zulily also shows that Dawgs' attorney, Christopher Hellmich, did not conduct a reasonable and competent inquiry before signing and filing the complaint. *See* Fed. R. Civ. P. 11(b)(3). Notably, Dawgs does not claim to have provided evidence that would plausibly support its unlawful access theory during the course of this action, before it dismissed this action without prejudice. (ECF No. 42).

Dawgs conceded at the hearing that it could have brought its claims in the District of Colorado,

where litigation between the parties has been pending for many years. (ECF No. 81, at 20:16-24). Thus, regardless of whether the November 8, 2016 screenshot was material new information, the court finds that Dawgs has again asserted claims in this District in bad faith and for an improper purpose, namely, to increase litigation costs and seek leverage over Crocs in the Colorado litigation, in violation of Rule 11(b)(1).[2] *See, e.g.*, ECF 45-2; ECF No. 81, at 5:24-6:1, 15:9-16, 21:3-4; *U.S.A. Dawgs, Inc., et al., v. Crocs, Inc.*, No. 2:16-cv-01694-JCM-PAL (Aug. 2, 2017) (ECF No. 41) Order, at 6 (finding sanctions warranted because, *inter alia*, Plaintiffs (including Dawgs) "submitted their initial filing with this court as a bargaining chip").

Further, the court agrees with Defendants that Dawgs' legal contentions were frivolous, in violation of Rule 11(b)(2). Dawgs has not provided colorable legal support for (1) suing Defendants Erik Rufer and Kelly Gray for alleged "hacking" where they were merely copied on an email thread; (2) claiming "an exclusive trade dress in something so generic as a Z-shaped upper;" and (3) asserting claims for "civil conspiracy"—where a company cannot conspire with its employees—and for "respondeat superior," which is not a cause of action. (*See* ECF No. 48, at 5-6). In filing and refusing to dismiss such claims after being served with Defendants' Rule 11 motion, attorney Christopher Hellmich violated Rule 11(b)(2). *See Chien*, 256 F.R.D. at 72.

### B. Calculation of fees

Defendants seek sanctions in the form of an award of all attorneys' fees and costs incurred in this action. The court finds that sanctions are appropriate in this instance. The court thus awards $50,000.00 in attorneys' fees in favor of Defendants: $37,500.00 to be incurred by Dawgs,[3] and $12,500.00 to be paid personally by Mr. Hellmich. This amount is calculated with Rule 11's goal of deterring baseless filings and litigation abuses in mind. *See Salman*, 104 F. Supp. 2d at 1270. This

---

[2] For these foregoing reasons, the court also finds that sanctions are proper pursuant to Section 1927 and the court's inherent powers. *See* 28 U.S.C. § 1927; *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (explaining that courts "have the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct," including attempts "to gain a tactical advantage in another case").

[3] Dawgs' assets were sold in a bankruptcy proceeding, after which the company was apparently liquidated. However, because Dawgs' pre-bankruptcy claims against Crocs survive in Colorado, the court's sanctions award herein shall remain available to Crocs as an offset in the event of a finding of liability against Crocs. (ECF No. 64, at 14-15).

court has previously found that Dawgs submitted a prior complaint against Crocs in this district as a bargaining chip. *See U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:16-cv-01694-JCM-PAL, ECF No. 41, at 6. The court thus finds that this amount is reasonable to deter Dawgs and its counsel from any such further abuses in this district. And, the award of $12,500.00 to be paid personally by Mr. Hellmich is reasonable, in light of the court's finding that he personally violated Rule 11(b)(2).[4] The award of $50,000.00 is also equitable, given the court's finding that plaintiff acted in bad faith in instituting and continuing this litigation. *See Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1127 (9th Cir. 1989).

Second, the fees awarded are reasonable per the lodestar calculation. In calculating a reasonable fee, the court must first multiply "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34.

Defendants seek attorneys' fees in the amount of $224,466.80 in attorneys' fees, and $77,388.70 in costs. (ECF No. 64, at 15). This amount is less than the total fees that Defendants actually incurred in its defense of this lawsuit. (ECF No. 64, at 6). The hourly billing rates for the three attorneys assigned to the case range from $364.90 to $807.70, which the court finds to be reasonable. *See, e.g.*, *Bird-B-Gone, Inc. v. Haierc Indus. Co.*, No. 2:18-cv-00819-RJC-NJK, 2018 WL 4682320, at *5 (D. Nev. Sept. 28, 2018); *SATA GmbH & Co. KG v. NingBo Genin Indus. Co.*, No. 2:16-cv-02546-JAD-GWF, 2018 WL 1796296, at *2 (D. Nev. Apr. 16, 2018). But, because this lawsuit was patently frivolous from the outset, the court finds in its discretion that it is appropriate to reduce the number of hours and costs for which Defendants should be reimbursed. Thus, the court has adjusted the fee award accordingly.

The court next considers the Rule 54-14 factors, which replicate the lodestar factors. *See* LR 54-14(b)(3).

---

[4] Dawgs' counsel also violated Section 1927, by improperly multiplying the litigation and maintaining this frivolous action for five months. *See* Part II.A. This is an additional basis for the fee award of $12,500.00.

### *1.* *The results obtained and the amount involved*

Defendants submit that they obtained the results they sought when Plaintiff voluntarily dismissed this case on November 17, 2017. (ECF No. 64, at 6). Defendants also note that they are only requesting a portion of the attorneys' fees incurred in its defense of this lawsuit. (*Id.*) However, as noted above, the court in its discretion will reduce the amount awarded to reflect the frivolous nature of this lawsuit.

### *2.* *The time and labor required*

Defendants note that their counsel was able to perform the work for the motions to dismiss and sanctions efficiently, given counsel's familiarity with the 10-year history of litigation between the parties. (*Id.* at 7.) Defendants also assert that the time spent on discovery was necessary, because Defendants needed to respond to "voluminous" discovery requests served by Dawgs. (*Id.*) The court acknowledges that Defendants had discovery obligations pursuant to the local rules in this district, but finds that, since Defendants knew from the beginning that this lawsuit was frivolous, the total time and labor they expended were not required. The court will therefore award a portion of the attorneys' fees requested.

### *3.* *The novelty and difficulty of the questions involved*

Defendants assert that, while the issues in this case were not novel, Defendants' attorneys had to expend considerable effort to understand the elements of the claims, and to investigate the facts and circumstances. (*Id.* at 7-8.)

### *4.* *The skill requisite to perform the legal service properly*

Again, Defendants note that while the issues in this case were not particularly difficult or novel, the expertise of Defendants' attorneys in intellectual property and technology law was required to present the issues clearly and concisely to the court, and to frame them against the backdrop of the Parties' litigation history. (*Id.* at 8.)

### *5.* *The preclusion of other employment by the attorney*

Although Defendants' attorneys were not precluded from other employment as a result of this litigation, "this action caused them to divert time and resources that could have been spent on other matters," such as Crocs' ongoing litigation with Dawgs in Colorado. (*Id.*)

### *6.* *The customary fee*

Defendants note that the billing rates for its counsel are consistent with those of other Las Vegas, Los Angeles, and San Francisco attorneys practicing in the intellectual property field. (*Id.* at 9-10) (citing data from the American Intellectual Property Law Association and fees awarded in various District of Nevada cases). Defendants also note that this court recently found that billing rates between $490.00 and $535.00 for associates, including for several of the same attorneys involved here, were reasonable. *See U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:16-cv-1694-JCM-PAL, 2019 WL 532300, at *6 (D. Nev. Feb. 11, 2019).

### *7.* *Whether the fee is fixed or contingent*

Defendants submits that the fees requested are fixed fees that were, in fact, paid by Crocs to Arnold & Porter for services rendered in this action. (ECF No. 64, at 10).

### *8.* *The time limitations imposed by the client or the circumstances*

Defendants assert that it was bound by the Federal Rules of Civil Procedure and the district's local rules in responding to plaintiff's complaint and filing its various motions. (*Id.* at 10-11).

### *9.* *The experience, reputation, and ability of the attorneys*

Defendants submit that, as of 2017, Mr. Berta had approximately 20 years of experience in intellectual property and complex litigation, Mr. Salzmann had 13 years of experience in intellectual property litigation, Mr. Callagy had approximately 7.5 years of intellectual property and complex litigation experience, Mr. Langendorf had approximately 8 years of intellectual property and complex litigation experience, Ms. Kent had approximately 3 years of intellectual property and complex litigation experience, and Mr. Gramacy had over 1 year of intellectual property and complex litigation experience. (*Id.* at 11.) Notably, Mr. Callagy held judicial clerkships prior to joining Arnold & Porter. (*Id.*)

### *10.* *The undesirability of the case, if any*

Defendants assert (and the court agrees) that this factor is not applicable. (*Id.*).

### *11.* *The nature and length of the professional relationship with the client*

Mr. Berta has represented Crocs since 2006, Mr. Callagy has represented Crocs since 2014, and Mr. Langendorf and Ms. Kent and Mr. Gramacy have represented Crocs since 2016. (*Id.*) Mr.

Salzmann represented Crocs on this case only, but provided specialized knowledge and experience regarding trade dress infringement claims. (*Id.* at 12.)

### 12. *Awards in similar cases*

Defendants cite *Seare v. St. Rose Dominican Health Foundation*, No. 2:10-CV-02190-KJD, 2011 WL 5101972 (D. Nev. Oct. 25, 2011), wherein the plaintiff alleged employment discrimination under Title VII of the Civil Rights Act of 1964. *Id.* at *1. Discovery failed to turn up any electronic copies of the supposed emails, and the plaintiff ultimately admitted that the emails were "embellished" to convince others to believe the allegations. *Id.* The court awarded sanctions in the amount of the "attorney's fees and costs in defending this action," totaling $67,430.58. *Id.* at *2. While *Seare* is similar to the present action, the attorneys' fees and costs awarded there were less than the fees and costs Defendants seek here. As such, the court has adjusted the fee award here to reflect those awarded in similar cases.

### 13. *Any other information the court may request*

Defendants submit (and the court agrees) that this factor is not applicable. (ECF No. 64, at 12).

### C. Summary

In light of the foregoing, the court holds that an award of $50,000.00 in favor of Defendants is reasonable to deter future litigation abuses, and is equitable in light of the improper conduct described above. The court also finds that a portion of the attorneys' fees and costs requested by Defendants are reasonable pursuant to the "lodestar" and Rule 54-14 factors. Accordingly, the court will award attorneys' fees in the amount of $37,500.00 to be paid by Dawgs, as well as $12,500.00 to be paid personally by Mr. Hellmich.

### III. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants' Third Motion for Sanctions is GRANTED.

The clerk of court is instructed to enter judgment in the amount of $37,500.00 in attorneys' fees in favor of Defendants, to be borne by U.S.A. Dawgs, Inc., *and* in the amount of $12,500.00 in

attorneys' fees in favor of Defendants, to be paid personally by Christopher Hellmich.

IT IS SO ORDERED. May 29, 2019.

_____
Honorable James C. Mahan
United States District Judge